**Louis Joseph WYLAND, Plaintiff,**

v.

**J. D. JAMES et al., Defendants.**

**No. CA 3–74–847–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 19, 1977.

· As Amended Jan. 24, 1977.

James S. Moss, Mesquite, Tex., for plaintiff.

Lee E. Holt, City Atty., T. Alex Eastus, Asst. City Atty., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

This is an action brought by Plaintiff under 42 U.S.C. § 1983 against Defendants, police officers of the City of Dallas, claiming money damages for false arrest, use of unreasonable force in making the arrest, and malicious prosecution. After trial to the Court, it is adjudged that Plaintiff has failed to establish his claim by a preponderance of the credible evidence.

The acts in question took place in the early morning hours of March 19, 1974, when Plaintiff and a male companion, Lawrence Furr, were driving at approximately 3:00 A.M. in a high-crime area of the City of Dallas. Plaintiff and his companion testified that they were returning to their homes after an evening of drinking and pool playing when they encountered a young woman who was experiencing automobile trouble. The young men state that they assisted her in getting her car underway and offered to follow her to her home in the event she experienced further difficulty but that she refused the offer and proceeded on her way. Wyland and Furr testified that they started on toward home but turned to follow the young woman believing that her car was not functioning normally. By the time they had turned, however, her car was out of sight and in the process of looking for her, Plaintiff turned his vehicle into the driveway of a private multifamily residence in the 4200 block of Holland Street, Dallas, Texas.

As Plaintiff turned his car into the private driveway, he was being observed by Officer J. D. James who was dressed in his regular police uniform and seated in a marked City of Dallas squad car. Officer James knew that the area had a high incidence of theft from motor vehicles and observed Plaintiff as he pulled into the driveway and drove slowly past the parked vehicles of the residents. Upon reaching the end of the driveway, Plaintiff put his car in reverse and rapidly backed out into the street. Officer James then switched on his emergency lights and stopped Plaintiff who pulled his vehicle into a nearby alley.

Before Officer James could radio in his location and approach Plaintiff's vehicle, Plaintiff left his car and walked over to Officer James' squad car. The officer ascertained that Plaintiff was not a resident of the multifamily residence and that he was not a guest of any resident. Officer James then asked Plaintiff to return to his car and be seated while the officer completed his radio check. Plaintiff refused to do so and urged his companion, who had remained in Plaintiff's vehicle, to join him outside.

Due to the lateness of the hour, the fact that he was in a high-crime area, the refusal of Plaintiff to remain in his vehicle, and the fact that there were two suspects and only one policeman, Officer James radioed for a back-up squad in keeping with normal police practices. A few minutes later, a second police car arrived with uniformed Officers Sullivan and Jarvis, the additional Defendants in this action.

Upon arriving, Officer Sullivan proceeded to question the Plaintiff while Officer Jarvis went into the street to direct traffic. While the testimony is conflicting as to events occurring after this time, the Court finds that Plaintiff conducted himself in a loud and obstreperous manner refusing to answer questions posed by Officer Sullivan. After a heated verbal exchange, Plaintiff turned and began to walk away from Officer Sullivan, purportedly to write down the license number of Officer Sullivan's squad car. Officer Sullivan reasonably believed,

however, that Plaintiff was leaving the scene, pursued him, grasped Plaintiff's arm, and turned him around. Plaintiff then raised his arm in a threatening manner as if to strike Officer Sullivan and the Officer responded by placing a police restraining hold upon Plaintiff. The two grappled briefly and tripped over a surveyor's stake and fell to the ground. Officers James and Jarvis came to assist Officer Sullivan, handcuffed Plaintiff, and placed Plaintiff in a squad car.

Plaintiff was then taken to jail and booked for violation of Texas Revised Civil Statutes Annotated, Article 6701d, Section 92 (failure to stop a vehicle before driving into a sidewalk area upon emerging from a private driveway) and Texas Penal Code, Section 42.01 (disorderly conduct). In later court action, Article 6701d, Section 92 charge was dropped and Plaintiff was convicted in city court for a violation of 42.01. Plaintiff was, however, acquitted upon appeal of this conviction to county court.

 As to Plaintiff's allegation of false arrest, we do recognize, of course, that damages are recoverable under § 1983 for violations of a citizen's 4th Amendment protections against an unlawful arrest, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. In this case, however, Plaintiff was observed by a police officer leaving a private driveway without stopping before driving onto a sidewalk. While Plaintiff contends that there was no paved sidewalk at that location, Sec. 92 of Art. 6701d uses the words " . . . onto a sidewalk or into the sidewalk area . . . . " which would indicate that a normal concrete or stone sidewalk is not required for the statute to apply. Further, Sec. 153 of Art. 6701d provides as follows:

> "Any peace officer is authorized to arrest without warrant any person found committing a violation of any provision of this Act."

This Court finds, therefore, that the arrest was proper and lawful.

 As to Plaintiff's second claim, it has long been recognized that a Federal civil rights action will lie against police officers for use of unnecessary or unreasonable force in effecting an arrest, *Davis v. Turner,* 197 F.2d 847 (5th Cir., 1952). This case, however, involves an incident occurring in a high-crime area in the early morning darkness. Further, Plaintiff acted in a belligerent, evasive and threatening manner which brought about the use of force that was employed. We find, therefore, that Defendants used only that degree of force they reasonably believed to be necessary to prevent Plaintiff from leaving the scene and to protect their persons. Substantiating this finding is the testimony of Lawrence Furr, who conducted himself in a normal manner, that the Defendants in all respects acted properly in dealing with him.

 Finally, as to the malicious prosecution allegation, it is again recognized that a Federal civil rights action will lie where there is malice or absence of probable cause, *Nesmith v. Alford,* 318 F.2d 110, (5th Cir., 1963). Here, however, a police officer witnessed Plaintiff entering a sidewalk area without stopping, a violation of Art. 6701d, Sec. 92. If any Texas Court has interpreted this statute to mean that it applies only where there is a paved sidewalk, this Court is unable to find any reference to such a decision. We believe, therefore, that the prosecution of Plaintiff was carried out in good faith based upon a reasonable belief that he had violated a Texas statute. The officers also had probable cause to believe that Plaintiff had violated 42.01 of the Texas Penal Code (disorderly conduct).

In summary, we are unable to find that Plaintiff's civil rights were violated in any respect. Defendants are directed to prepare and submit an appropriate form of judgment, each party to bear his own costs of this action.