**James Thomas MICKENS**

v.

**Andrew J. WINSTON.**

**Civ. A. No. 76–0429–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 26, 1978.

James Thomas Mickens, pro se.

James W. Hopper, Richmond, Va., for defendant Winston.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a former inmate at the Richmond City Jail, Richmond, Virginia, brings this action *pro se* pursuant to 42 U.S.C. § 1983, alleging racial segregation of the jail.[1] Jurisdiction is attained pursuant to 28 U.S.C. § 1343(3).

Plaintiff complains that, from June 12, 1976 to August 6, 1976, he was confined in the "B" section of the jail, which he alleges is used to house only black inmates, while inmates who have committed similar crimes and who required similarly secure facilities, were housed in other sections of the jail. Defendant Winston, the Sheriff of the City of Richmond, admits that portions of the jail are segregated by race and that race is indeed a criterion in determining an inmate's housing assignment. Defendant nonetheless contends that such intentional segregation is constitutionally permissible. Defendant's explanation is that while there are "black only" housing units, there are no "white only" sections of the jail. Rather, the numerically smaller white inmate population (usually 20% of the total population) is concentrated so that each unit that houses whites is approximately one third to one half white-populated. Defendant contends that such racial "balancing" is necessary because "[s]erious security difficulties might arise and in the past have arisen where a small white inmate population was evenly distributed among the total inmate population." Moreover, defendant points out that the "black only" facilities are equal to the integrated facilities.

The law is clear that "racial segregation, which is unconstitutional outside prisons, is unconstitutional within prisons, save for the 'necessities of prison security and discipline.'" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (quoting *Lee v. Washington*, 390 U.S. 333, 334, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968)). The "necessity" concept is narrow. "[P]rison authorities have the right, acting in good faith and *in particularized circumstances,* to take into account racial tensions in maintaining security, discipline, and good

---

1. Plaintiff's allegations of inadequate medical care, unsanitary conditions of food preparation, and inadequate recreation were dismissed by the Court on January 25, 1977.

order in prisons and jails." *Lee v. Washington*, 390 U.S. at 334, 88 S.Ct. at 995 (Black, Harlan, and Stewart, JJ., concurring) (Emphasis added). A generalized expectation of racial violence is insufficient. *Singleton v. Board of Commissioners*, 356 F.2d 771 (5th Cir. 1976); *United States v. Wyandotte Co.*, 480 F.2d 969 (10th Cir. 1973). As the Supreme Court stated in *Buchanan v. Warley*, 245 U.S. 60, 81, 38 S.Ct. 16, 20, 62 L.Ed. 149 (1917),

> It is urged that this proposed segregation will promote the public peace by preventing race conflicts. As desirable as this is, and important as is the preservation of public peace, this aim cannot be accomplished by laws or ordinances which deny rights created or protected by the federal Constitution.

*Accord, Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

In *Washington v. Lee*, 263 F.Supp. 327, 331 (M.D.Ala.1966), *aff'd sub nom. Lee v. Washington, supra*, a three judge panel declared:

> [I]n some *isolated instances* prison security and discipline necessitates segregation of the races *for a limited period*. However, recognition of such instances does nothing to bolster the . . . general practice [of separating the races].

(Emphasis added.)

Defendant here candidly admits that the "need" to "balance" the races stems in large part from inadequate supervision of inmates caused by lack of sufficient guard personnel.[2] The Court, at the invitation of the defendant, has toured the facilities in issue and has concluded that, indeed, the defendant is faced with a difficult, if not impossible, task of affording appropriate supervision over the inmate population. Defendant notes that he can assign only one guard per shift to each building. A building consists of three tiers of individual cells in the maximum security areas, hous-

ing 72 prisoners; and three large dormitory-type rooms, on separate floors, in the medium security areas, housing more than 100 prisoners. The lone guard in each building must often perform duties outside his assigned building during the shift, such as escorting an inmate from one area of the facility to another as may be required. Thus, it would appear that it is not an infrequent occurrence for there to be periods when 100 or more inmates have no immediate supervision.

■ It is clear from both the testimony adduced at trial and the Court's own visual inspection of the facility[3] that the professed need to house white inmates only in units that house a substantial number of white inmates can be alleviated in large part by proper supervision of all inmates. The Court therefore finds that the defendant Winston has not met his heavy burden of proving that the official policy of segregation utilized at the City Jail is necessary to maintain prison discipline or security. *Cf. Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *McLaughlin v. Florida*, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). While the Court fully appreciates that defendant Winston acted in good faith, doing the very best he could with the limited personnel available to him because of budgetary restrictions, "[l]ack of funds is not an acceptable excuse for unconstitutional conditions of incarceration." *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 201 (8th Cir. 1974); *accord, Gates v. Collier*, 501 F.2d 1291, 1320 (5th Cir. 1974); *Miller v. Carson*, 401 F.Supp. 835, 889–91 (M.D.Fla.1975) (citing numerous cases). Defendant may not rely on a defense of inadequate resources to justify deprivation of constitutional rights. While the Court is sympathetic with the difficulties encountered by the defendant Winston in the performance of his duties, this is of

2. Defendant Winston stated at trial: "I don't necessarily say that it [the need to segregate the races] is because of the clash between the two races as much as it is [because of] a lack of proper supervision."

3. The Court finds from the evidence adduced at trial and its own inspection of the facilities that the conditions of confinement in the black sections of the jail are substantially equivalent to those in the integrated portions of the jail.

little consequence in light of the fact that defendant has violated plaintiff's constitutional right of equal protection. The answer to the problem is of course obvious. Those responsible for the allocation of funds must allocate an amount sufficient to assure that no inmate's constitutional rights are violated. If the physical safety of the inmates is endangered because of a lack of sufficient personnel, additional personnel must be provided or the inmate population reduced to a point where the personnel available can properly supervise it. The failure promptly to alleviate the existing situation might well be construed, under appropriate circumstances, as constituting bad faith. While the instant case involves only the individual plaintiff, the defendant and those in whose province it is to allocate state and city resources are now on notice of an obvious problem.

Plaintiff seeks monetary damages and compensation for the injury he allegedly has suffered. Admittedly, the Court was initially of the view that plaintiff would not be entitled to recover damages. Further consideration causes the Court to conclude that the plaintiff is indeed entitled to monetary damages. In *Cary v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, the Supreme Court held that students who were suspended from public school in violation of their constitutional right of procedural due process were entitled to recover only nominal damages, absent proof of actual injury. The court in that action overturned the lower court's ruling that every deprivation of procedural due process may be presumed to cause injury. The Court specifically distinguished cases involving racial discrimination, however, noting that:

> prerequisites for recovery of damages appropriate to compensate injuries caused by deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by deprivation of another [right].

*Id.* at 264–65, 98 S.Ct. at 1053.

The Court suggested that district courts must examine "the nature of the interests protected by the particular constitutional right in question" to determine whether compensatory damages may be awarded without proof of actual injury. *Id.*

The history of the Fourteenth Amendment, and the treatment that has been accorded our black citizens by virtue of historical de jure segregation, convince the Court that official racial segregation is inherently injurious, especially to minorities. *See Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). As the United States Court of Appeals for the Seventh Circuit declared in *Thomas v. Pate*, 493 F.2d 151, 163 (7th Cir. 1974):

> That there is present injury to an inmate, intentionally segregated because of his race, is particularly clear if the inmate is black. Because of the relatively small size of the prison community, its closed nature, and the numerous facets of prison life subject to regulation, any racially discriminatory action by prison officials is likely more effectively to create a badge of inferiority for black inmates than would necessarily attach to minority residents of a city as a result of discriminatory action outside prison walls.

Although plaintiff has failed to vocalize, with any specificity, his alleged injury, confining his testimony to "feeling bad" by virtue of defendant's intentional policy of racial segregation, the Court concludes that he was presumptively injured, for which he is entitled to a monetary award. The fact that the defendant's policy was dictated because of a lack of financial resources is of no consequence. While any assessment of monetary damages must of necessity be extremely imprecise, the Court notes that plaintiff's incarceration in the segregated section of the City Jail was for a period of twenty-five days out of the total period of approximately eight months that he was lodged therein; and that as of the time of the institution of this suit he was a Virginia state prisoner serving a twenty year sentence on drug related convictions. The Court therefore deems that an award of $250 would constitute appropriate and fair compensation for the injury inflicted upon him.

Plaintiff's request for injunctive relief, in light of the fact that he is no longer

confined to the City Jail, will be dismissed as moot.

An appropriate order will issue.