**Cleo R. HERRERA, Special Administrator of the Estate of Jo Ann Yellow Bird, deceased, Appellee,**

v.

**Clifford VALENTINE, individually and as a police officer of the Gordon, Nebraska, Police Department, and the City of Gordon, Nebraska, Appellants.**

**Nos. 79–1958, 80–2202.**

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1981.

Decided July 13, 1981.

---

Frank E. Piccolo, LeRoy Anderson, argued, Murphy, Pederson, Piccolo & Anderson, North Platte, Neb., for appellants.

Douglas J. Sorensen, argued, Schear, Sorensen, Strickman, Tooby & Turner, Oakland, Cal., for plaintiff and appellee Jo Ann Yellow Bird, and Cleo R. Herrera, Sp. Administrator of the Estate of Jo Ann Yellow Bird, deceased.

Before HEANEY and HENLEY, Circuit Judges, and PECK,* Senior Circuit Judge.

HEANEY, Circuit Judge.

This matter comes before the Court for a second time. We originally remanded the case to the district court to determine the amount that Jo Ann Yellow Bird is entitled to for attorney's fees and expenses. The

* JOHN W. PECK, U. S. Senior Circuit Judge, United States Court of Appeals for the Sixth

district court has made its determination. We now reach the merits of the appeal and affirm the judgment of the court below except insofar as it relates to the award of attorneys' fees and expenses.

I

On September 15, 1976, Jo Ann Yellow Bird, an Indian woman visibly in the later months of pregnancy, was kicked in the stomach by Clifford Valentine, a police officer employed by the City of Gordon, Nebraska. Valentine was attempting to arrest Yellow Bird's husband at the time of the incident. As Yellow Bird went to the aid of her husband, Valentine kicked her in the abdomen, throwing her to the ground. After he had kicked her, Valentine handcuffed her and forced her into the back of his patrol car. Yellow Bird's pleas for medical attention were ignored. Instead of driving her a few blocks to the nearest hospital, Valentine drove her nearly twenty miles to the county jail. On the way to the jail, Valentine stopped the car and threatened to take Yellow Bird out into the country and shoot her. She was arrested and jailed; her requests for counsel were also ignored. As a result of the beating and inattention to her medical needs, she suffered physical and emotional injuries; her unborn child died in her womb and was delivered dead two weeks later.

Thereafter, Yellow Bird filed a lawsuit in federal district court alleging violations of her federal civil rights, as well as various state law claims. She named fourteen parties as defendants in the case, including Valentine and the City of Gordon. After a lengthy trial, the jury returned a verdict that found the City of Gordon and Valentine liable for violating Yellow Bird's federal civil rights. The jury awarded the plaintiff $300,000 in compensatory damages. The defendants' post-trial motions challenging the verdict were denied and this appeal followed.

Circuit, sitting by designation.

On appeal, the appellants contend that the trial court erred by: (1) improperly submitting to the jury Yellow Bird's state law claims against the appellants; (2) permitting Yellow Bird to amend her complaint to conform to the evidence establishing a claim against the City under 42 U.S.C. § 1983; (3) denying their post-trial motions, which asserted that the verdict imposes liability vicariously upon the City and, alternatively, that there is insufficient evidence to sustain the verdict against the City and Officer Valentine; (4) instructing the jury that it could compensate Yellow Bird for the loss of her constitutional rights independent of any compensation due her for physical and emotional injury; (5) sustaining an excessive verdict; and (6) awarding excessive attorneys' fees and expenses.

## II

The appellants make a number of arguments relating to Yellow Bird's claims under state law. We need not reach these issues, however, since the jury rendered a verdict for all the defendants on each of Yellow Bird's state law claims. Assuming *arguendo*, that appellants' arguments are compelling, we could do no more than what the jury has already done—render a judgment against Yellow Bird on her state law claims.

The appellants' arguments only reach a level of significance if we were to agree with their more fundamental assertion that the jury verdict is irreconcilably inconsistent, and that the jury actually intended to find against the defendants on state law grounds. For the reasons stated below, we determine that the trial court properly allowed Yellow Bird to amend her pleadings to conform to the evidence adduced at trial, and that the jury's verdict is not irreconcilably inconsistent. Accordingly, the appellants' arguments relating to Yellow Bird's state claims are without significance.

## III

Near the conclusion of the trial, the plaintiff moved to amend her complaint to conform to the evidence adduced at trial by adding a claim against the City of Gordon under 42 U.S.C. § 1983. The City contends that the trial court abused its discretion by permitting the amendment, arguing that the City had not anticipated a civil rights claim and had not prepared a defense.

Rule 15(b) of the Federal Rules of Civil Procedure permits parties to amend their pleadings to adequately reflect the case as it was actually tried in the courtroom. The Rule authorizes the trial court to permit the amendment when an unpleaded issue is tried with the express or implied consent of the parties. The Rule also authorizes the court to permit the amendment when evidence is challenged as outside the scope of the pleadings. Fed.R.Civ.P. 15(b). The purpose of the Rule is to "promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel * * *." 6 C. Wright & A. Miller, Federal Practice & Procedure, § 1491 at 454 (1971); *see Wallin v. Fuller*, 476 F.2d 1204, 1210 (5th Cir. 1973).

The Rule contemplates that amendments to pleadings should be allowed with liberality. Moreover, "it is a settled rule of practice that the trial court is vested with sound discretion in granting or refusing an amendment to pleadings, and the extent of this Court's review is limited to the question of abuse of this discretion." *Gallon v. Lloyd-Thomas Co.*, 264 F.2d 821, 823 (8th Cir. 1959); *see Nielson v. Armstrong Rubber Co.*, 570 F.2d 272, 276 (8th Cir. 1978).

■ We conclude that Yellow Bird's civil rights claim was tried with the implied consent of the City of Gordon, and that the district court did not abuse its discretion by allowing the plaintiff to amend her complaint. The plaintiff effectively placed the City on notice of her intention to prove a civil rights claim against it as early as in her opening statement. Yellow Bird actually began to prove her section 1983 case against the City with her first witness. Early in the trial, the plaintiff introduced evidence that established the City's informal policy or custom of mistreating Indians generally, and Mr. and Ms. Yellow Bird specifically. Moreover, the City introduced

evidence on the same issue as part of its defense. This record demonstrates that the trial court was correct in reasoning that the amended complaint "merely amplifies some of the allegations that have been proven here in this case."

## IV

The City asserts that Yellow Bird's claim against it is based solely upon the doctrine of *respondeat superior.* It is clear that a municipality cannot be held vicariously liable under section 1983 for the acts of its employees. *Monell v. Department of Soc. Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *cf. Parratt v. Taylor,* —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Cotton v. Hutto,* 577 F.2d 453, 455 (8th Cir. 1978); *Sebastian v. United States,* 531 F.2d 900, 904 (8th Cir.), *cert. denied,* 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976). Yellow Bird does not, however, assert that the City is liable under the doctrine of *respondeat superior.* Her claim is that the City's failure to properly hire, train, retain, supervise, discipline and control Valentine and the other police officers *directly* caused her tortious injury. *See Owen v. City of Independence,* 445 U.S. 622, 655 n.39, 100 S.Ct. 1398, 1418 n.39, 63 L.Ed.2d 673 (1980). Under that theory, Yellow Bird was obligated to prove, by a preponderance of the evidence, that the City breached a duty owed to her and that that breach proximately caused the deprivation of her constitutional rights. *See Turpin v. Mailet,* 619 F.2d 196, 201–202 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *McClelland v. Facteau,* 610 F.2d 693, 695–697 (10th Cir. 1979).

In order to prove her case, Yellow Bird had to establish that the City had notice of prior misbehavior and that its failure to act upon such knowledge caused her injury. "[W]here senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts." *Turpin v. Mailet, supra,* 619 F.2d at 201.[1]

■ If a municipality fails to train its police force, or if it does so in a grossly negligent manner so that it inevitably results in police misconduct, "the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights." *Leite v. City of Providence,* 463 F.Supp. 585, 590 (D.R.I.1978); *cf. Goodman v. Parwatikar,* 570 F.2d 801, 803 (8th Cir. 1978); *Freeman v. Lockhart,* 503 F.2d 1016, 1017 (8th Cir. 1974). Moreover, a municipality's continuing failure to remedy known unconstitutional conduct of its police officers is the type of informal policy or custom that is amenable to suit under section 1983. *See Monell v. Department of Soc. Serv., supra,* 436 U.S. at 690–691 & n.56, 98 S.Ct. at 2035–2036 & n.56.

## A

We are satisfied that Yellow Bird proved her case against the City of Gordon.[2] It is

---

1. The Second Circuit Court of Appeals has noted that "[a]n even stronger case for imposing liability for inaction occurs when the municipality fails to remedy a specific situation, the continuation of which causes a deprivation of constitutional rights." *Turpin v. Mailet,* 619 F.2d 196, 201 n.5 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

2. The trial of the case lasted for nearly a month. Almost every factual issue was disputed. At the close of the evidence, and after the jury had been properly instructed, the case was submitted to the jury for its deliberation. The jury returned a plaintiff's verdict. Now the appellants assert, *inter alia,* that the evidence is insufficient to sustain the jury's ultimate finding. We have long held, however, that an appellate court is not free to substitute its view of the facts for that of the jury. We consider the evidence in the light most favorable to the plaintiff, Jo Ann Yellow Bird. We assume that all conflicts in the evidence were resolved by the jury in the plaintiff's favor. We assume as proved all facts that Yellow Bird's evidence tends to prove. We give the plaintiff the benefit of all favorable inferences that reasonably may be drawn from the facts proved. Finally, if we determine that reasonable minds could differ as to the conclusions to be drawn, we must affirm the judgment of the district court.

undisputed that racial tension was at a peak before, during and after the incident giving rise to this lawsuit. Well before she was injured by the Gordon police, Yellow Bird, her husband and many other Indians and Caucasians as well, complained to the authorities of continuing police misconduct. Use of excessive force, sexual misconduct, racist conduct and selective enforcement of the laws were among the many infractions cited. The Yellow Birds were essentially spokespersons for the dissident group. Their complaints were a subject of community-wide knowledge.

Dissatisfied with the City's failure to remedy their complaints, Yellow Bird wrote to the Acting Director of the Nebraska Indian Commission, Stephen F. Janis.[3] Because of numerous other complaints regarding the misconduct of the Gordon police, the Commission went to Gordon and convened a hearing in early 1976. At that hearing, attended by both Indians and Caucasians, the Commission received nearly forty separate complaints of police misconduct. These complaints were taken under advisement and later submitted to the Mayor of Gordon.

A few months later, the Commission reconvened in Gordon and heard more complaints. After this meeting, Janis appeared at a City Council meeting and personally handed the Mayor the citizens' complaints. The entire City Council was given a summary of the complaints that had been prepared by an attorney with Panhandle Legal Services. The Yellow Birds also appeared before the City Council and once again made known their various complaints. The meeting, and more particularly the Yellow Birds' participation, was well publicized in the local newspapers. The Commission asked the City to remedy the problem and

report back to it. The City neither remedied the problem nor reported back. The matter was apparently turned over to the Sheridan County Attorney's Office, which later reported to the Mayor of Gordon that it was obvious that the City's police force considered themselves "overlords," whose orders were to be obeyed without question. A similar conclusion was reached by Security Services of Lincoln, Nebraska, an outside agency investigating the Gordon Police Department.

■ The foregoing demonstrates that the City was adequately notified that its five-member police force needed close and continuing supervision. It, however, permitted its overzealous police force to continue its overlording. The inevitable result was the kind of misconduct that caused Yellow Bird's physical beating, the loss of her unborn child and her medical and emotional problems.[4] The jury was properly and adequately instructed on the City's potential section 1983 liability. There was sufficient evidence to warrant those instructions and to sustain the jury's ultimate decision.

### B

■ Officer Valentine argues that the evidence against him is not sufficient to sustain the jury's verdict. We disagree. Reviewing the evidence in the light most favorable to Yellow Bird, we are convinced that the verdict is correct. Valentine kicked the visibly pregnant plaintiff in the stomach. He denied her necessary medical assistance even though she persisted in asking for it. Though a hospital was seven blocks away, she was driven to the county jail—nearly twenty miles in the opposite direction. On the way to the jail, Valen-

---

*Northrup v. Archbishop Bergan Mercy Hospital*, 575 F.2d 605, 607 (8th Cir. 1978).

3. The Nebraska Indian Commission is a state agency created by the Governor; its purpose is to assist Indians with resolving problems they encounter within their communities. Among the problems the Commission was created to address is police misconduct that discriminatorily affects Indians as a class.

4. There is evidence in the record that shows there was a turnover of personnel in the department between the time that the complaints were submitted by the Commission to the City and the date of Yellow Bird's injury. The record, however, also shows that this turnover did not remedy the situation, and that the newly hired personnel also required close and continuing supervision.

tine, who had been injured in the brawl and was visibly upset, pulled off to the side of the road, turned to Yellow Bird and said, "I don't know whether to take you people out in the country and shoot you or to take you to jail." Yellow Bird's medical expert testified that the kick and resulting lack of medical care caused the death of Yellow Bird's unborn child. Valentine's threat, in conjunction with the whole ordeal, caused

5. When the jury finished its deliberation, it returned to the courtroom and delivered its verdict to the court. The verdict form read as follows:

> We, the jury, make the following findings as to the plaintiff's claims against the defendants arising under state law. A finding for the plaintiff against a defendant shall be indicated by a "yes" on the appropriate line. A finding for an individual defendant shall be indicated by a "no" on the appropriate line.

Robert Barnes ___No___
(Yes or No)

Clifford Valentine ___No___
(Yes or No)

Terry Weil ___No___
(Yes or No)

City of Gordon ___No___
(Yes or No)

Roger Etzelmiller ___No___
(Yes or No)

Maxine Kozal ___No___
(Yes or No)

James Talbot ___No___
(Yes or No)

County of Sheridan ___No___
(Yes or No)

> We, the jury, make the following findings as to the plaintiff's claims against the defendants arising under federal law. A finding for the plaintiff against a defendant shall be indicated by a "Yes" on the appropriate line. A finding for an individual defendant shall be indicated by a "no" on the appropriate line.

Robert Barnes ___No___
(Yes or No)

Clifford Valentine _Yes___
(Yes or No)

Terry Weil ___No___
(Yes or No)

City of Gordon _Yes___
(Yes or No)

Roger Etzelmiller ___No___
(Yes or No)

Maxine Kozal ___No___
(Yes or No)

> The following portion of this verdict shall be used if any of the defendants have been

her great emotional distress. The court's instructions were proper and more than adequate. The plaintiff's section 1983 verdict stands as rendered.

## V

The court instructed the jury on damages under the plaintiff's state and federal claims separately.[5] Three damage instruc-

> found liable for violating the plaintiff's rights under state or federal law.

> We, the jury, hereby set the plaintiff's compensatory damages, in words and figures, in the sum of $300,000.00 three hundred thousand dollars & no/100 Dollars ($_____).

> The following portion of this verdict may be used if, and only if, any of the defendants have been found liable for violating the plaintiff's rights under federal law.

> We, the jury, hereby assess punitive damages, in words and figures in the sum of _____ Dollars ($_____).
>
> Dated this 2nd day of August, 1979.
>
> /s/ Patricia Moler
> Foreperson

Above the paragraph referring to the state law claims, the jury had written the word "negligence." This fact is of little significance given the clarity of the verdict form, and it certainly does not render the verdict inconsistent.

The district judge, *sua sponte*, inquired of the jury whether it intended to leave the space for punitive damages blank. The foreperson replied affirmatively. She attempted to explain the omission by stating they could not award punitive damages because they found only violations of state law.

The clerk read the verdict and the jurors were polled. There is nothing in the record to show that the appellants moved the court at that time to send the jury back into deliberation to cure any alleged defect in the verdict. After judgment had been entered, the appellants filed their motions for judgment notwithstanding the verdict and for a new trial. Included in these motions were *ex parte* affidavits of two jurors, the clear import of which were to impeach the jury's verdict. The trial court denied the motions.

If the appellants believed that the jury's verdict was unclear when rendered, the burden rested upon them to move the court, to order the jury back into deliberation. In our view, it is bad practice to wait until after the verdict is rendered and judgment is entered to reappear in court and attempt to impeach a verdict with affidavits of jurors that contradict their written verdict. *Cf. University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 547 & nn. 42–43 (5th Cir. 1974).

Based upon the record before us—there was no transcript of the reading of the verdict—and in view of the clarity of the written verdict

tions were given with regard to Yellow Bird's federal claims. The jury was instructed that if it determined the issue of liability favorably to Yellow Bird, it would then assess damages based upon:

(1) The physical harm that she suffered, including ill health and physical pain and discomfort;

(2) The emotional and mental harm that she suffered, including fear, humiliation and mental anguish;

(3) The extent and duration of her injuries, including their continuation into the future; and

(4) The violation of her substantive constitutional right to liberty and to due process of law.

The court also properly instructed on the issue of punitive damages. The defendants' objections to the trial court's instructions were directed to the fourth element. Accordingly, we address the issue whether, independent of any recovery for actual physical and emotional injury, a plaintiff can be compensated for the deprivation of certain substantive constitutional rights.[6]

The trial court specifically instructed the jury as follows:

> If you find that the plaintiff has been deprived of a constitutional right, you may award damages to compensate her for the deprivation. Damages for this type of injury are more difficult to measure than damages for a physical injury or injury to one's property. There are no medical bills or other expenses by which you can judge how much compensation is appropriate. In one sense, no monetary value we place upon constitutional rights can measure their importance in our society or compensate a citizen adequately for their deprivation. However, just because these rights are not capable of pre-

cise evaluation does not mean that an appropriate monetary amount should not be awarded.

The precise value you place upon any constitutional right which you find was denied to plaintiff is within your discretion. You may wish to consider the importance of the right in our system of government, the role which this right has played in the history of our republic, the significance of the right in the context of the activities which the plaintiff was engaged in at the time of the violation of the right.

### A

Section 1983 serves basically two functions: it deters future governmental action that violates persons' civil rights, *Owen· v. City of Independence, supra,* 445 U.S. at 651–652, 100 S.Ct. at 1415–1416; *Imbler v. Pachtman,* 424 U.S. 409, 442, 96 S.Ct. 984, 1000, 47 L.Ed.2d 128 (1976) (White, J., concurring), and it compensates the injured party. *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). When these two purposes are achieved, the substantive constitutional guarantee at stake is vindicated and the harmed party is made whole.

The Supreme Court has long viewed money damages as an appropriate remedy for redressing the loss of a person's civil rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 395–396, 91 S.Ct. 1999, 2004–2005, 29 L.Ed.2d 619 (1971); *Giles v. Harris,* 189 U.S. 475, 485, 23 S.Ct. 639, 641, 47 L.Ed. 909 (1903) (Holmes, J.). In order to fully vindicate the challenged guarantees and deter future conduct that threaten their practical significance, full compensation is neces-

---

form, we cannot conclude that the trial court abused its discretion in denying the appellants' post-trial motions challenging the jury's verdict as irreconcilably inconsistent.

**6.** We are not faced here with a case that involves a violation of a constitutional right *without* injury. In this case, Yellow Bird proved, by a preponderance of the evidence, that she suf-

fered severe and lasting physical injury and emotional anguish as a result of the constitutional deprivations. However, since the jury was instructed that it should compensate Yellow Bird for the loss of her constitutional rights independent of the physical and emotional injury she suffered, we inquire whether this is a proper element of damages.

sary.[7] To secure complete satisfaction, damage awards must take account of the intrinsic dimension that envelopes each substantive constitutional right. This concept is not a novel one. For example, the federal courts have traditionally compensated the intangible constitutional loss that results when a party's voting rights are infringed. *See generally Lane v. Wilson*, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); *Nixon v. Condon*, 286 U.S. 73 (1932); *Nixon v. Herndon*, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927); *Wayne v. Venable*, 260 F. 64 (8th Cir. 1919). Even if a plaintiff in a voting rights case cannot establish that the loss of his vote resulted in any consequential or actual injury, substantial nonpunitive damages are presumed to flow from the wrong itself. As Judge Walter Sanborn reasoned over sixty years ago,

> In the eyes of the law [the right to vote] is so valuable that damages are presumed from the wrongful deprivation of it without evidence of actual loss of money, property, or any other valuable thing, and the amount of the damages is a question peculiarly appropriate for the determination of the jury, because each member of the jury has personal knowledge of the value of the right.

*Wayne v. Venable, supra*, 260 F. at 66.

■ A number of federal courts have recently ruled that substantial compensatory damages are recoverable when substantive constitutional rights have been violated. *See Dellums v. Powell*, 566 F.2d 167, 194–196 (D.C.Cir.1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (damages available to persons arrested for peaceful demonstration); *Tatum v. Morton*, 562 F.2d 1279, 1281–1285 (D.C.Cir. 1977) (damages available to plaintiffs unlawfully arrested for demonstrating peacefully); *Bryant v. McGinnis*, 463 F.Supp. 373, 388 (W.D.N.Y.1978) (damages available when inmates' rights to practice their religion were denied); *Mickens v. Winston*, 462

F.Supp. 910, 913 (E.D.Va.1978), *aff'd*, 609 F.2d 508 (4th Cir. 1979) (damages are presumed when inmate was racially segregated); *Manfredonia v. Barry*, 401 F.Supp. 762, 770–772 (E.D.N.Y.1975) (damages given for unlawful arrest while plaintiff was delivering a lecture on the use of contraceptives). We believe this to be the proper rule.

### B

The appellants assert that *Carey v. Piphus, supra*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, controls this case and prohibits an award for the violation of Yellow Bird's substantive constitutional rights, other than some nominal sum. We disagree. The holding in *Carey* was specifically limited to its facts. That case involved two students who were suspended from public schools for disciplinary reasons without any type of hearing in violation of the "procedural" requirements of the Due Process Clause. The Court, although noting that their procedural due process rights were infringed, nevertheless ruled that absent a showing by the two plaintiffs that some actual injury resulted from the violation, it would not presume damages. The Court distinguished the plaintiff's procedural due process case from defamation and related tort law cases in which it has applied the doctrine of presumed damages, based in part upon the "ambiguous" causal link that usually accompanies cases in the former class.

The Court cautioned, however, that its analysis in *Carey* may not dictate a similar result when a different constitutional violation is involved. The Court stated:

> [T]he elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another.

---

7. Many substantive constitutional guarantees may be violated without accompanying consequential or "actual" injury. If consequential injury were the touchstone for substantial compensatory awards, many blatant constitutional violations would remain unredressed. *See* Note, *Damage Awards for Constitutional Torts: A Reconsideration After Carey v. Piphus*, 93 Harv.L.Rev. 966, 976–977 & nn. 68–69 (1980).

*Carey v. Piphus, supra,* 435 U.S. at 264–265,[8] 98 S.Ct. at 1052–1053.

The Court stated that we must consider the nature of the interest that is sought to be protected by the particular constitutional guarantee that is infringed. *Id.* at 265, 98 S.Ct. at 1053. It also directed us to consider the common law of torts, which has as one of its guiding principles that persons must be fairly compensated for the injuries and losses they suffer as a result of violations of their legal rights. *Id.* at 267, 98 S.Ct. at 1054.

### C

We turn now to the specific constitutional guarantees involved in the instant case, mindful that "[a] damages remedy against the defending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when [among the wrongdoers] is the institution that has been established to protect the very rights * * * transgressed." *Owen v. City of Independence, supra,* 445 U.S. at 651, 100 S.Ct. at 1415.

The jury was instructed that it could find that the defendants: (1) used excessive force against the plaintiff; (2) knowingly failed to provide her with necessary medical assistance; (3) falsely arrested her; and (4) denied her counsel after her arrest and incarceration, all in violation of her federal constitutional rights.

Under our Constitution, persons are guaranteed to be free from the use of excessive force against them by their police officers. The Due Process Clause protects the security of one's life and limbs as well as property. There is clearly a liberty interest in freedom from punishment through bodily injury. *See Putman v. Gerloff,* 639 F.2d 415, 420–421 & n.6 (8th Cir. 1981). *See generally* Newman, *Suing the Lawbreakers:*

*Proposals to Strengthen the Section 1983 Damage Remedy for Law Enforcers' Misconduct,* 87 Yale L.J. 447, 453 (1978).

Similarly, the Due Process Clause mandates that the right to needed medical assistance cannot be denied someone taken into custody. *See Fitzke v. Shappell,* 468 F.2d 1072 (6th Cir. 1972). It is clear that once someone is arrested and taken into custody, that person "becomes both vulnerable *and* dependent upon the state to provide certain simple and basic needs." *Id.* at 1076. The Due Process Clause guarantees that among these basic needs is the substantive right to medical assistance. *Id.; Scharfenberger v. Wingo,* 542 F.2d 328, 331 (6th Cir. 1976).

The Fourth Amendment creates an expectation of privacy and guarantees that citizens shall not be arrested without probable cause and reasonable grounds supporting the belief that they are committing a crime. *See, e. g., Butler v. Goldblatt Bros., Inc.,* 589 F.2d 323, 325 (7th Cir. 1978), *cert. denied,* 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979); *Dellums v. Powell, supra,* 566 F.2d at 175–176; *cf. Wyland v. James,* 426 F.Supp. 304, 306 (N.D.Tex.1977). The Fourth Amendment secures the citizens' substantive right to security from the government's unreasonable intrusions into privacy. *See generally* Comment, *Presumed Damages for Fourth Amendment Violations,* 129 U.Pa.L.Rev. 192, 212–216 (1980).

Finally, a person taken into custody has a Fifth Amendment right to counsel. *Edwards v. Arizona,* —— U.S. ——, 101 S.Ct. 1880, 1883–1884, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona,* 384 U.S. 436, 467–473, 86 S.Ct. 1602, 1624–1627, 16 L.Ed.2d 694 (1966). In *Miranda,* the Supreme Court reasoned that because a person can involuntarily make inculpatory statements during custo-

---

**8.** Since *Carey,* several other federal courts have, likewise, understood that decision to be limited in its application. *See Konczak v. Tyrrell,* 603 F.2d 13, 17 (7th Cir. 1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980); *Burt v. Abel,* 585 F.2d 613, 615–616 (4th Cir. 1978); *Mickens v. Winston,* 462 F.Supp. 910, 913 (E.D.Va.1978), *aff'd,* 609 F.2d 508 (4th Cir. 1979). In our view, *Carey* presents no bar to the recovery of substantial nonpunitive damages for violations of the substantive constitutional rights involved in the instant case.

dial interrogation, the right to counsel at that point in time provides the safeguard necessary to protect the criminal defendant's substantive right to remain silent and to assure a continuous opportunity to exercise that right. *Id.* at 460, 472, 86 S.Ct. at 1620, 1626.

Our recitation of the nature of the constitutional rights involved in this case is intentionally brief. Our aim here is simply to distinguish the substantive rights involved in this case from the right that was involved in *Carey.* The Court in *Carey* determined that the *procedural* right at issue there was nothing more than a mechanical process designed to avoid the mistaken or wrongful infringements of other *substantive* constitutional guarantees. In this case, by contrast, substantive constitutional rights, highly prized in our federal system of government, are clearly at stake.

### D

As noted, *Carey* also directs us to inquire whether the specific constitutional guarantee at stake has a common law analogue. The Court reasoned there that "[i]n some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action." *Carey v. Piphus, supra,* 435 U.S. at 258, 98 S.Ct. at 1049. In the instant case, the interests protected by the particular constitutional rights at issue are analogous to the interests protected by the common law dignitary torts.[9] In cases involving invasions of dignitary rights, it is predictably difficult to place a value on the resulting injury. The injury that results from the invasion of dignitary expectations is often not an economic loss. Nevertheless, the common law has always redressed their breach with substantial damages. These damages are usually characterized as general damages—the type that generally flow from the wrongful act. *See* D. Dobbs, Remedies § 3.2 at 138–139 (1973).

The general damages that may be recovered in the dignitary tort class of cases "do not require specific proof of emotional harm to the plaintiff * * *. Thus general damages for assault or false imprisonment and like torts are not dependent upon actual proof of such harm." *Id.* § 7.3 at 529. The value that is placed upon the dignitary loss is a question for the jury, subject, of course, to review by the courts. *See Wayne v. Venable, supra,* 260 F. at 66; Comment, *Presumed Damages for Fourth Amendment Violations,* 129 U.Pa.L.Rev. 192, 204–207 (1980). *But see* Love, *Damages: A Remedy for the Violation of Constitutional Rights,* 67 Cal.L.Rev. 1242, 1282–1285 (1979) (legislation needed to set specific presumed damage awards for violations of civil rights); Newman, *Suing the Lawbreakers: Proposals to Strengthen the Section 1983 Damage Remedy for Law Enforcers' Misconduct,* 87 Yale L.J. 447, 465 (1978) (a liquidated damage sum should be awarded for violations of civil rights in addition to any actual damages).

The Court in *Carey* implicitly authorized the doctrine of presumed damages as it is applied to the dignitary torts of libel and defamation. The Court reasoned that in such cases injury is almost certain to result from the wrongful act, and that the specific injury is difficult to prove. Moreover, since the resulting injury is so likely, no purpose is served by requiring proof of this kind. *Carey v. Piphus, supra,* 435 U.S. at 262, 98 S.Ct. at 1051.

---

**9.** Professor Dobbs has stated that:

The list of dignitary actions is a fairly long one, though obscured in many instances by the fact that the plaintiff also has some economic claim as well. Many of these actions are recognized torts that involve some confrontation with the plaintiff in person or some indirect affront to his personality—assault, battery, false imprisonment, malicious prosecution, intentional infliction of mental anguish, libel and slander, invasion of privacy, alienation of affections are all in this category. These torts have their statutory and constitutional analogues, so that essentially the same sort of interests may be protected under federal or state civil rights statutes or under the federal Constitution.

D. Dobbs, Remedies § 7.1 at 509 (1973) (footnote omitted).

In this case, Yellow Bird was deprived of certain substantive constitutional rights that have been recognized as implicit in the Constitution, and highly prized in our federal system. It is reasonable to assume that violations of Yellow Bird's Fourth Amendment, Fifth Amendment and Fourteenth Amendment Substantive Due Process rights resulted in injury, just as injury is presumed to flow from an invasion of a person's dignitary rights in a voting rights case or a defamation action. The causal link between the wrongful deprivation of the substantive right and the resulting harm is anything but "ambiguous." *See Carey v. Piphus, supra,* 435 U.S. at 263, 98 S.Ct. at 1052.

█ Accordingly, the court's instruction to the jury permitting it to award damages to compensate Yellow Bird for violations of her constitutional rights independent of her other injuries is a proper instruction. As we stated earlier, Yellow Bird has proved actual physical and emotional injury. To the extent, however, that the overall verdict reflects, in part, an independent award for the violations of her civil rights, it stands as rendered.

## VI

█ The appellants contend that the jury verdict is monstrously excessive and must be modified upon review. The standard we apply in reviewing a trial court's refusal to set aside a verdict on the grounds of excessiveness or inadequacy is very narrow. In *Taken Alive v. Litzau,* 551 F.2d 196 (8th Cir. 1977), we stated:

[I]nadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; * * * we shall continue to consider review, as we have said before, not routinely and in every case, but only in those rare situa-

tions where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result.

*Id.* at 198 (quoting *Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–448 (8th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961)); *see Richardson v. Communication Workers of America,* 530 F.2d 126, 129 (8th Cir.), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). Our careful review of the record convinces us that the jury's award of $300,000 is not a plain injustice or a monstrous or shocking result.

The record amply evidences Yellow Bird's extensive injuries: she was kicked in the stomach and thrown to the ground. The kick to her abdomen was characterized by two medical experts as life threatening. Yellow Bird was in extreme physical pain after the assault. The blow caused the death of her unborn child. She was hospitalized for several days after the stillbirth of her child. Her physical pain and suffering continued to the time of trial, three years later. The emotional trauma that accompanied the stillbirth of her child was devastating. The mental anguish she suffered from being driven *away* from a hospital that was only a few blocks away, in conjunction with Valentine's threat to kill her before they arrived at the jail—at a time when she knew and communicated to others that her unborn child was in need of assistance—all added to the emotional injury that she suffered. Finally, it is clear that she suffered a great indignity by being denied her civil rights.

We will not alter the verdict solely upon the basis that it was surprisingly high by the appellants' standards. We have stated before that

[i]n the absence of more elaborate and explanatory guidelines for the jury in the somewhat elusive area of pain and suffering, we must expect substantial disparities among juries as to what constitutes adequate compensation for certain types of pain and suffering. This is a litigious fact of life of which counsel, clients and insurance carriers are fully aware. Once

they place their fate in the hands of a jury, then they should be prepared for the result, whether the award be considered generously high or penuriously low. They cannot expect the Court to extricate them in all cases where the award is higher or lower than hoped for or anticipated.

*Taken Alive v. Litzau, supra*, 551 F.2d at 198 (quoting *Mainelli v. Haberstroh*, 237 F.Supp. 190, 194 (M.D.Pa.1964), *aff'd*, 344 F.2d 965 (3d Cir. 1965)).[10]

## VII

On August 18, 1980, the district court issued an order determining that a reasonable award of attorney's fees and expenses was $153,705.01. Prior to that, on July 7, 1980, Jo Ann Yellow Bird died. Although the district court had originally scheduled a hearing on the plaintiff's motion for attorneys' fees, it ultimately determined that no hearing was necessary and that it could make its ruling based upon the affidavits filed with the Court. All parties were given prior notice of this decision and no one objected to the procedure.

After the district court issued its order, however, the appellants moved the court to vacate its order of August 18, 1980, arguing that the plaintiff's right to attorneys' fees abated upon her death, that the court should have scheduled an evidentiary hearing, and that the award was excessive. The appellants also filed a series of motions that asked the court to convene an evidentiary hearing and to make more specific factual findings with regard to its August 18, 1980, order. These motions were denied.

On November 3, 1980, plaintiff's counsel filed a motion for the substitution of Cleo R. Herrera as party plaintiff. Herrera is the special administrator of the Estate of Jo Ann Yellow Bird. This motion was granted on November 5, 1980. On November 26, 1980, the appellants filed another series of motions that once again sought to vacate the court's award of attorneys' fees and

expenses. It also sought to vacate the court's November 5, 1980, substitution order. These motions were denied and the appellants now seek review in this Court, asserting that:

(1) Yellow Bird's death abates any claim to attorneys' fees;

(2) The trial court erred by not conducting an evidentiary hearing on the fee issue;

(3) The factual findings in the trial court's fee award order are deficient; and

(4) The award of attorneys' fees is excessive.

■ We dismiss the appellants' first three assertions. First, the plaintiff's right to attorneys' fees rests within the sound discretion of the district court. It "may allow the prevailing party, other than the United States, a reasonable attorney's fee as *part of the costs*." 42 U.S.C. § 1988 (1976) (emphasis added). Section 1988 directs that in a proper case, the district court may award the prevailing party attorneys' fees as a part of the party's overall remedy. That statutory provision does not create a new cause of action that abates upon the death of the prevailing party.

Even if section 1988 creates such a cause of action, as appellants contend, it is clear that Nebraska's survival statute would save Yellow Bird's attorneys' fee claim. In Nebraska, causes of action generally survive the death of either party. *See* Neb.Rev. Stat. §§ 25–1401, 25–1402 (Reissue 1979). The survival statute "declares in plain terms that suits instituted to redress a particular class of wrongs—among them being certain injuries to the person and reputation—shall abate by the death of the *defendant*, but that no other pending action shall abate for any cause." *Webster v. City of Hastings*, 59 Neb. 563, 81 N.W. 510, 512 (1900) (emphasis added) (construing the predecessor section to Neb.Rev.Stat. § 25–1402 (Reissue 1979)). *See also Sheibley v. Nelson*, 83 Neb. 501, 119 N.W. 1124, 1125 (1909) (libel action not abated by plaintiff's

---

**10.** Finally, upon our review of the record, we are satisfied that the appellants were not prejudiced by either the plaintiff's inadvertent reference to an insurance carrier's interest in the case, or the plaintiff's passionate closing argument.

death). This remains the law today. *See Spradlin v. Myers*, 200 Neb. 559, 264 N.W.2d 658, 660 (1978). Accordingly, we hold that Yellow Bird's claim for attorneys' fees survived her death. *See, e. g., Burt v. Abel*, 466 F.Supp. 1234 (D.S.C.1979).[11]

■ Second the record shows that the appellants were notified that a hearing was deemed unnecessary by the trial court. They did not object to the procedure at that time, but instead waited until after the district court issued its order to complain. If they deemed it necessary, they could have timely filed a motion requesting a hearing; failure to do so bars their asserting such as error on appeal.

Moreover, it is clear, by reviewing this record, that a hearing was not necessary. When serious factual disputes surround an application for attorney's fees, a hearing is required. But here, the only disputed issue could have been the question of duplication, and this is easily resolved by a careful review of the thorough and detailed time records and affidavits that were filed in support of the fee application. *See, e. g., Pennsylvania v. O'Neill*, 431 F.Supp. 700, 703 (E.D.Pa.1977), *aff'd*, 573 F.2d 1301 (3d Cir. 1978).

■ Third, while the better practice is for the district court to articulate its reasoning supporting an award of attorneys fees, it is not necessary in every case. In the present case, the trial court awarded attorneys fees based solely upon a lodestar formula, *i. e.*, hours worked multiplied by a reasonable hourly rate. The lower court did not increase the award for risk or ingenuity; it based its final award upon a review of the filed affidavits. It specifically stated that in reviewing the affidavits it was guided by the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). Given the state of this record, we cannot conclude that the trial court's failure to articulate more precisely its specific reasoning constituted an abuse of discretion.

■ Addressing the appellants' final argument, our careful review of the affidavits filed in support of Yellow Bird's motion for attorneys' fees leads us to conclude that the district court's fee award is excessive. Much of the time billed was duplicative, and many of the expenditures were unnecessary. The district court allowed compensation for approximately 3,800 hours of time billed. The court compensated these hours at variable rates of pay that totaled $140,493. We agree with the lower court's variable fee assessments, but reduce the overall figure of reasonable hours worked to 1,967. Accordingly, we reduce the attorneys' fee award to $88,214.95. The district court's award of expenses is, likewise, overly generous; the trial court awarded approximately $13,211 as reasonable expenses. Eliminating unnecessary expenses, we award $7,286.73 as plaintiff's expenses.[12]

---

11. Moreover, to the extent that judgment on the merits was entered prior to Yellow Bird's death, the judgment survives. *See* Neb.Rev. Stat. § 25–1419 (Reissue 1979).

   Citing nothing more than Fed.R.Civ.P. 25, the appellants contend that the district court abused its discretion by allowing the substitution of Herrera as party plaintiff. We disagree, and conclude that it acted properly in ordering the substitution.

12. Our specific adjustments of the district court's order are set out below. The figure following each name represents the total award for attorneys' fees and expenses for that request.

| | | |
|---|---|---|
| (1) | D. Sorensen, Attorney | $53,921.11 |
| (2) | C. Strickman, Attorney | $ 7,535.42 |
| (3) | N. Tooby, Attorney | $ 1,243.15 |
| (4) | J. Rhine, Attorney | $12,630.00 |
| (5) | J. Leach, Attorney | $15,364.92 |
| (6) | R. Swencionis, Para-legal | $ |
| (7) | D. Clegg, Attorney | $ 1,982.50 |
| (8) | T. Waller, National Jury Project | $ |
| (9) | D. Wiley, National Jury Project | $ |
| (10) | M. Rorick, Private Investigator | $ |
| (11) | D. Moonshine, Attorney | $ 2,232.31 |
| (12) | B. Michel, Law Student | $ |
| (13) | C. Merrill, Attorney | $ 357.50 |

Accordingly, we modify the order of the district court that granted attorneys' fees and expenses. The total attorneys' fees and expenses recoverable by the plaintiff are $95,501.68.

The costs of this appeal are taxed to the appellants. The appellee is hereby directed to file an affidavit with this Court within twenty days detailing her attorneys' fees in this appeal. The appellants will have ten days thereafter to respond.

We affirm the judgment of the district court as modified.

| | | |
|---|---|---|
| (14) | R. MacPherson III, Attorney | $ 98.27 |
| (15) | B. Ellison, Attorney | $ 39.00 |
| (16) | S, Karp, Attorney | $ 97.50 |
| (17) | S. Gross, Attorney | $_____ |
| (18) | R. Atkins, Law Student | $_____ |
| (19) | T. Meyer, Attorney | $_____ |
| (20) | M. Kolb, Attorney | $_____ |
| (21) | S. Schear, Attorney | $_____ |

TOTAL AWARD: $95,501.68