659 F.2d 851
 Robert VILLANUEVA, Appellant,
v.
D. GEORGE, Chief of Custody Officially, Gumbo ACI, Tom
Lenninger, Captain of Correctional Officers, Mr. Shannon,
Chief of Social Workers, Dave Almond, Correctional Officer
and Nick Buttice, Correctional Officer, Appellees.
 No. 80-1085.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 9, 1981.
Decided Sept. 16, 1981.
 
 Clyde C. Farris, Jr., St. Louis, Mo., made argument for appellant.
 Eugene K. Buckley, St. Louis, Mo., made argument for appellee.
 Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY, McMILLIAN and ARNOLD, Circuit Judges, En banc.
 HEANEY, Circuit Judge, with whom LAY, Chief Judge, BRIGHT, STEPHENSON, McMILLIAN and ARNOLD, Circuit Judges, join.
 Robert Villanueva brought this action for civil damages under 42 U.S.C. §§ 1983 and 1985, alleging that five correctional officers had deprived him of his civil rights when he was a pretrial detainee at the St. Louis County Adult Correctional Institution (Gumbo). At the close of plaintiff's evidence, the district court granted the defendants' motions for directed verdict on the grounds that there was no evidence that defendants had violated Villanueva's civil or constitutional rights and that there was no evidence that he had sustained damage as a result of the defendants' actions. We initially affirmed as to all defendants. 632 F.2d 707. On rehearing en banc we reverse as to the chief correctional officer Lenninger, and correctional officers, Almond and Buttice. We affirm that portion of the judgment below directing verdicts for defendants Shannon and George.
 I.
 Our review considers whether there was sufficient evidence in the record to create issues of fact for the jury. In determining this question, we view the evidence most favorably to the non-moving party and give him the benefit of all reasonable inferences that may be drawn from the evidence. See e. g., Dulin v. Circle F. Indus. Inc., 558 F.2d 456, 465 (8th Cir. 1977). See also Voegeli v. Lewis, 568 F.2d 89, 92 (8th Cir. 1977); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 (1971). Viewed in this light, we believe that the record establishes a submissible case and that the district court erred in taking the case from the jury.
 Villanueva was indicted in St. Louis County, Missouri, for forcible rape, sodomy and assault with intent to do great bodily harm. Unable to post bond, he was detained at the St. Louis County Jail in Clayton, Missouri while awaiting trial. Upon his arrival at that institution, he was interviewed by a social worker and classified as a maximum security detainee. The classification was based on the nature of the crime with which the appellant was charged. Villanueva was initially confined in an individual cell which measured six feet by six feet. This confinement continued for about three months. He was then placed in a cell of similar size in another section of the jail. After the in-house transfer he was permitted to leave his cell during the daylight hours, go to a dayroom with a television set and a large walking area, and go to the gymnasium three times a week. He remained in this section of the Clayton Jail for approximately two months. He was then transferred to Gumbo, where he was detained from June 23 to July 19, 1978. The transfer was occasioned by renovation work being performed at Clayton.
 When Villanueva was transferred from Clayton to Gumbo, Clayton authorities advised their colleagues at Gumbo that Villanueva had been confined on a maximum security status and recommended that no reclassification be considered. Villanueva was interviewed by a social worker at Gumbo who acceded to Clayton's maximum security classification.
 At Gumbo, Villanueva was housed in the facilities reserved for detainees on maximum security status. Each maximum security area consists of sixteen individual one-person cells, approximately six feet by six feet, furnished with a bed, a combination toilet-sink and a light bulb. Appellant was required to eat all his meals in his cell. He was permitted out of his cell for approximately fifteen minutes every second or third day. During that period he was permitted to take a shower and walk in the corridor. He was not permitted to exercise out of doors. He was taken to the gymnasium for exercise once during the first week of his confinement. While confined at Gumbo, Villanueva was bitten by a rat and his cell was infested with insects. While certain areas of Gumbo were sprayed once each month by an exterminator, the cells were not. He found hair and roaches in his food on at least two occasions. Maximum security detainees were limited to one telephone call and one non-contact visit per week. He remained at Gumbo for a period of twenty-eight days before he was transferred back to Clayton.
 The district court found that the evidence presented by Villanueva was insufficient to establish that the restrictive confinement imposed upon him while a pretrial detainee at Gumbo constituted punishment and granted appellees' motions for a directed verdict.
 II.
 The Due Process Clause of the United States Constitution prohibits the punishment of persons prior to a judgment of conviction. Accordingly, the constitutional issue presented here is whether the conditions of confinement to which Villanueva was subjected were punitive in nature. Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979); Campbell v. Cauthron, 623 F.2d 503, 505 (8th Cir. 1980). This determination
 focuses on whether the detention facility officials have acted with intent to punish the inmates. Even in the absence of express punitive intent, "if a restriction or condition is not reasonably related to a legitimate goal if it is arbitrary or purposeless a court permissibly may infer that the purpose of the governmental action is punishment * * *."Campbell v. Cauthron, supra, 623 F.2d at 505 (quoting Bell v. Wolfish, supra, 441 U.S. at 539, 99 S.Ct. at 1874). See also Putman v. Gerloff, 639 F.2d 415, 419 (8th Cir. 1981); Lareau v. Manson, 651 F.2d 96 (2d Cir. 1981). The legitimate governmental objectives of pretrial detention are to insure a detainee's presence at trial and to maintain security and order in its detention facilities. See Putman v. Gerloff, supra, 639 F.2d at 419.
 The question of whether there is sufficient direct evidence of the defendants' punitive intent is one for the jury. Moreover, the jury may "infer that the purpose was punishment from the fact that the condition either bore no reasonable relation to a legitimate goal or exceeded what was necessary for attaining such a goal." Putman v. Gerloff, supra, 639 F.2d at 420 (footnote omitted) (emphasis added). See also Bell v. Wolfish, supra, 441 U.S. at 539 n.20, 99 S.Ct. at 1874 n.20.
 There is evidence in this record from which the jury could have reasonably concluded that Villanueva's conditions of confinement were unnecessarily excessive and bore no reasonable relation to a legitimate governmental interest. As we stated above, there is sufficient evidence in the record to show that appellant was removed from a jail in which he had significant freedom of movement, and jailed at Gumbo in a barred cell measuring six feet by six feet with a small window, a combination toilet-sink and a light bulb. He was regularly confined in this cell for seventy-two hour periods without opportunity for exercise or showers. When he was allowed out of his cell, it was for only fifteen minutes and then he was only allowed to walk up and down his cell corridor or shower. He was forced to eat his meals in his cell which was infested with insects and housed rodents; he was bitten by a rat while confined. He was permitted only one telephone call and one fifteen minute non-contact visit per week. While the appellees were aware that keeping the appellant in his cell for longer than twenty-four hour periods without exercise or showers violated the institution's own regulations, they did not take steps to see that the regulations were followed. The reason advanced by the appellees for this failure was a shortage of correctional officers; such an excuse is not a valid defense. See e. g., Rhodes v. Chapman, --- U.S. ----, ----, 101 S.Ct. 2392, 2404, 69 L.Ed.2d 59 (1981) (Brennan, J., concurring); Jackson v. Bishop, 404 F.2d 571, 580 (8th Cir. 1968). Cf. Seward v. Hutto, 525 F.2d 1024, 1025 (8th Cir. 1975).
 
 
 1
 We emphasize that our decision is not based solely on the fact that Villanueva was confined in a cell measuring six feet by six feet, see Rhodes v. Chapman, supra, --- U.S. ----, 101 S.Ct. 2392, 69 L.Ed.2d 59. It is rather based upon the totality of the circumstances, including cell size, time spent in the cell, lack of opportunity for exercise or recreation, general sanitary conditions, and the fact that the appellant's past behavior demonstrated an ability to be confined under less restrictive conditions without incident.
 
 
 2
 Appellees argue that Villanueva's conditions of confinement were a result of his being classified as a maximum security risk at the Clayton Jail. The appellees reason that since they did not have the authority to alter the classification, any consequence of that status cannot be their responsibility. This argument misses the mark. The question is not whether they could or should have reclassified Villanueva at Gumbo. Rather, the question is, did they have knowledge of the fact that his conditions of confinement were punitive and yet refused to remedy such. See Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); Freeman v. Lockhart, 503 F.2d 1016, 1017 (8th Cir. 1974). Cf. Herrera v. Valentine, 653 F.2d 1220, 1224-1225 & n.1 (8th Cir. July 13, 1981). There is evidence in this record from which the jury could have answered that question in the affirmative.
 
 
 3
 The record supports Villanueva's contention that chief correctional officer Lenninger and correctional officers Almond and Buttice had personal knowledge of the conditions of confinement to which the appellant was subjected and nevertheless failed to take steps to remedy the situation.[1]
 
 
 4
 Appellee Lenninger was chief correctional officer at Gumbo during the period of Villanueva's pretrial detention. Lenninger was in charge of security at Gumbo. He was also charged with the control of the inmates, including Villanueva. Moreover, he was the director of the daily work schedules of the facilities' correctional officers. The record shows that Villanueva personally informed Lenninger that he was being confined in his six by six foot cell for seventy-two hour periods in violation of the facilities' own rules. Lenninger was also aware of the fact that Villanueva's cell was infested with insects and needed the services of a rodent exterminator. Lenninger's apparent failure to take steps to remedy these conditions of confinement could have been found by the jury to be a constitutional tort.
 
 
 5
 Appellees Almond and Buttice were correctional officers whose duties included the day to day supervision of Villanueva. These officers had knowledge of the appellant's conditions of confinement and nevertheless took no steps to remedy the situation. It is true that these officers may assert a defense of good faith and qualified immunity, if they were following the orders of their superiors. Nevertheless, it is also true that " 'if they knew or should have known that their (failure to act was) violating the plaintiff's constitutional rights, * * * (they may not) hide behind the cloak of institutional loyalty.' " Putman v. Gerloff, supra, 639 F.2d at 423 (quoting Forsyth v. Kleindienst, 599 F.2d 1203, 1217 (3d Cir. 1979). It was up to the jury to determine whether these officers knowingly failed to remedy unconstitutional conditions of confinement.
 
 
 6
 The district court's ruling that Villanueva failed to make a submissible case because he did not establish actual damages as a result of his confinement is also erroneous. This Court has already determined that "deprivations of certain constitutional rights, even without a showing of actual injury, may be vindicated, at a minimum, by making such actionable for nominal damages." Tatum v. Houser, 642 F.2d 253, 255 (8th Cir. 1981). Moreover, we have recently held that the violations of certain substantive constitutional rights are redressible by substantial compensatory awards independent of actual injury. Herrera v. Valentine, 653 F.2d 1220, 1227-1231 & n.6-8 (8th Cir. July 13, 1981).
 
 
 7
 The judgment of the district court is affirmed in part and reversed in part, and the matter is remanded to the district court for action consistent with this opinion. Costs will be taxed to appellees, Lenninger, Almond and Buttice.
 
 
 8
 HENLEY, Circuit Judge, with whom ROSS, Circuit Judge, joins, dissenting.
 
 
 9
 Fairly read, the opinion of the majority seems to hold that the basic questions for decision are whether the conditions of confinement of appellant could be found to be punitive and whether, either inferably or directly, the evidence of punitive intent was sufficient to go to the jury.
 
 
 10
 In seeking answers to these questions, the majority factually has painted an unnecessarily dismal picture. Thus, some brief recapitulation of fact is indicated.
 
 
 11
 Villanueva, a pretrial detainee charged with serious crimes of violence, was moved from the jail at Clayton, Missouri to the more rural setting at Gumbo while the Clayton facility was being renovated. After transfer on June 23, 1978 he was initially held for a period of five days in what is called the lower treatment area. That area, evidently much the same as the upper treatment area but with somewhat more amenities, is one in which new arrivals charged with serious crimes are held for a brief time. Thereafter Villanueva was moved to the upper treatment area, a maximum security unit, where he was housed both day and night through July 16, a period of nineteen full days. On July 17 and July 18 Villanueva was away from Gumbo by day attending his trial on felony charges. He spent the nights of July 17 and July 18 at Gumbo and checked out finally the morning of July 19. Villanueva's complaints, found possibly meritorious by the majority, principally relate to the nineteen days of confinement in the upper unit rather than to the entire period of twenty-six or twenty-seven days running June 23 to July 19.
 
 
 12
 Conditions said to be related to restricted confinement are overstated as well. The record reflects that Villanueva was bitten by a rodent described by him as a "rat" (probably a field mouse) three inches long. Only one other inmate had ever seen a rat in the unit, and no other evidence of the presence of rats, such as droppings, had been discovered although it did appear that at times field mice from nearby fields had come in. Whatever the genre of the vicious beast in question, it bit and broke the skin on Villanueva's left hand for a distance of about 1/16 inch. The incident was reported to a medical officer but no treatment was administered (none is shown to have been required) and no serious consequences are shown to have developed. There is no justification for any conclusion that the rodent would not have bitten Villanueva had the cell door been opened wide or that the rodent was "housed", as the majority declares, in Villanueva's cell.
 
 
 13
 As to insects and sanitary conditions in general, there is no indication that the maximum security unit was permitted to remain in generally poor condition. The food preparation and service areas at Gumbo were sprayed regularly. The pipes through the cell walls which served as transit avenues for roaches were sprayed regularly as well. Each detainee had access to a broom and bedding was changed weekly. While there were some bugs, doubtless the bugs were not restricted to maximum security cells.
 
 
 14
 Maximum security detainees ate the same food as did all inmates and employees. While Villanueva found roaches in his food a couple of times, it is not suggested that their presence was deliberate or intentional on the part of defendants who ate from the same kitchen.[1] Villanueva used the Commissary thirteen times, had visits, showered and exercised every second or third day, had law books brought to him, and used the telephone. He was not insulted, starved or physically abused in any way.
 
 
 15
 It is true that at times due to a shortage of officers he was not permitted to shower and exercise daily and his freedom of movement was more restricted than it had been during the last weeks he was at the Clayton jail. And it is this restriction of movement that must support the result reached by this court if that result is to be supported.
 
 
 16
 No complaint of the initial classification of Villanueva as a security risk could be voiced or is voiced. He was facing serious charges of assault with intent to kill, forcible rape and sodomy on two of which charges he was later convicted.[2] His bail was fixed at $75,000.00, later reduced to $30,000.00. His keeper was obliged to keep Villanueva under restrictions reasonably related to the goals of insuring Villanueva's presence and maintaining order in the jail. Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Putman v. Gerloff, 639 F.2d 415 (8th Cir. 1981); Campbell v. Cauthron, 623 F.2d 503 (8th Cir. 1980).
 
 
 17
 The initial classification was carried over or renewed when Villanueva was transferred to Gumbo and Gumbo authorities had no authority to change it without Clayton's consent.
 
 
 18
 While it is true that Lenninger knew of the classification and of the restrictions on Villanueva's movements, it is true also that Gumbo authorities undertook review of the classification with Clayton authorities each week and no change was ever ordered.
 
 
 19
 It is equally true that Lenninger and the other defendants knew or should have known that at times Villanueva was exercised and bathed less frequently than the prison rules required.
 
 
 20
 But Lenninger could not make bricks without straw. Holt v. Sarver, 309 F.Supp. 362 (E.D.Ark.1970). He could not alter classifications. He was a subordinate officer in the system and there is no reason to believe that he or the other defendants could either reject the prisoners thrust upon Gumbo by Clayton authorities or employ additional personnel to deal with those prisoners.
 
 
 21
 As the majority makes clear, we have said that an excuse such as shortage of officers is not a valid defense, but the cases from this circuit cited by the majority in support of its statement all refer to contexts in which injunctive relief is sought as a means of reform of an ongoing social institution. See, e. g., Seward v. Hutto, 525 F.2d 1024, 1025 (8th Cir. 1975), quoting Finney v. Arkansas Board of Correction, 505 F.2d 194 (8th Cir. 1974); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). See generally O. Fiss, The Civil Rights Injunction (1978).
 
 
 22
 We have also held that an action for damages against state officials under section 1983 must be based upon a claim arising out of a clear violation of claimant's federally protected rights. Villanueva has made no such showing of law or fact as would warrant submission of his case to a jury. Indeed, had the case been submitted and had the jury gone so far astray as to return a verdict for plaintiff, on motion for a new trial the district court would have been required to set aside the verdict.[3]
 
 
 23
 This dissent sounds no retreat, cf. Rhodes v. Chapman, --- U.S. ----, ----, 101 S.Ct. 2392, 2402, 69 L.Ed.2d 59 (1981) (Brennan, J., concurring), from the policy of careful judicial scrutiny of prison conditions and practices that has obtained in this circuit at least since Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968), but it is time to end judicial scrutiny of Villanueva's claim which has twice been before the district court, twice been before the court of appeals, and is completely without merit. The judgment of the district court should be affirmed.
 
 
 
 [1]
 The district court properly directed verdicts for Shannon and George. Since the record clearly establishes that these two individuals were not charged with the personal supervision of the appellant, nor chiefly responsible for the control of inmates at Gumbo, they may not be held legally accountable for the conditions of Villanueva's confinement. An institution may charge certain individuals with the duty to supervise inmates. Moreover, an individual may personally undertake such a duty by his very actions, or a state may statutorily impose such a duty. See e. g., Mo.Ann.Stat. § 221.020 (Vernon); Tatum v. Houser, 642 F.2d 253, 254 (8th Cir. 1981) (Sheriff is responsible for the conditions of confinement in the jails within his county even absent specific knowledge of unconstitutional conduct). Since no duty arose that would obligate Shannon or George to act, their failure to act cannot result in liability
 
 
 [1]
 It is not entirely clear that Villanueva testified that he found hair in his food. He said, "Well, since we got our food taken up there from the kitchen, you could expect to find hair in the food, or, as I found, a few roaches in my food a couple times."
 
 
 [2]
 Villanueva testified that he was convicted on the assault and sodomy charges
 
 
 [3]
 On motion for new trial, of course, the verdict is set aside if it is against the clear weight of the evidence, Fed.R.Civ.P. 59, while on motion for directed verdict or for judgment n.o.v. the standard is somewhat more restrictive on the district court. Firemans Fund Ins. Co. v. AALCO Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972)
 Since juries ordinarily can be expected to render a proper verdict trial judges at times have found that reservation of ruling on a motion for directed verdict and submission of the case to the jury will make it unnecessary for the court ever to rule on the motion.