Melvin Leroy TYLER; Frank Kevin Pool; George Thorn; Vincecca Vallard; Jerry Jones; Mark Hamilton; Jack Morgan and McKinley Robinson, Appellants,

v.

Dr. Leroy BLACK and Donald Wyrick, Appellees.

Nos. 86–1043, 86–1044.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1987.

Decided Jan. 12, 1989.

Deborah Neff, Asst. Atty. Gen., Jefferson City, Mo., for appellants.

David Kite, Jefferson City, Mo., for appellees.

Before LAY, Chief Judge, HEANEY, Circuit Judge,* HENLEY, Senior Circuit Judge, and McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN and MAGILL, Circuit Judges, en banc.

HENLEY, Senior Circuit Judge.

This en banc submission follows an opinion of a panel of this court in Nos. 86–1043, 86–1044, reported as *Tyler v. Black*, 811 F.2d 424 (8th Cir.1987).[1]

The basic appeal results from the district court's partial denial of permanent injunctive and declaratory relief. Appellants, inmates at the Missouri State Penitentiary (MSP), brought this suit under 42 U.S.C. § 1983 making constitutional challenges to certain conditions and procedures at the Special Management Facility (SMF), once known as Special Management Unit (SMU). Appellee Black is Director of the Missouri Department of Corrections, and appellee Wyrick is the Warden of MSP. The panel

affirmed in part, reversed in part, and remanded with instructions.

Although some factual details may be recited, the facts generally and the history of the litigation are reviewed in the panel opinion, *Tyler v. Black, supra,* as well as in *Tyler v. Black,* 744 F.2d 610 (8th Cir. 1984).

SMF is a segregation unit within MSP. It is made up of a new building, Housing Unit 5C, and a remodeled existing building, Housing Units 5A and 5B. Housing Unit 5C contains Level I, the most restrictive level of confinement in SMF. Housing Units 5A and 5B contain Levels II and III respectively, which are progressively less restrictive. The Unit was opened in 1982. Its purpose is to serve as housing for administrative and disciplinary segregation of inmates from the general population.

As indicated in the panel opinion, appellants filed this suit in 1982, challenging numerous conditions and procedures at SMF. Appellants subsequently made a motion for preliminary injunctive relief on their claims. Following a hearing, the United States Magistrate issued a Report and Recommendation, recommending that appellants' motion for preliminary injunctive relief be granted in part and denied in part. The magistrate's Report and Recommendation was adopted by the district court and judgment entered accordingly. Our court affirmed. *See Tyler,* 744 F.2d at 611–12.

Following hearing on the merits, the magistrate recommended that the requested permanent injunctive and declaratory relief be granted in part and denied in part. The district court adopted the magistrate's Report and Recommendation with one modification. This appeal followed.

Appellants challenged the district court's denial of relief on the following claims: (1) due process violations in the original July

---

* The Honorable Gerald W. Heaney assumed senior status on January 1, 1989.

1. Black and Wyrick filed a notice of appeal in No. 86–1043 on January 8, 1986. Plaintiffs Tyler, et al., then filed a cross-appeal in No. 86–1044 on January 9, 1986. Black and Wyrick did not brief or argue any issues as appellants in

No. 86–1043, but they did brief and argue issues as appellees in No. 86–1044. Therefore, we dismissed the appeal of Black and Wyrick in No. 86–1043. Here, as did the panel, we will refer to Tyler, et al., as appellants, and Black and Wyrick as appellees.

26, 1982 mass transfer of inmates to SMF and in SMF's present transfer and review procedures; (2) denial of access to the courts; and (3) eighth amendment violations in insufficient recreation opportunities in all Levels, and in double celling and the use of "boxcar" doors in Level I.[2]

In general, the panel had little difficulty with the issues other than those going to alleged eight amendment violations.

■ The eighth amendment prohibition of cruel and unusual punishment applies to conditions of confinement "when the conditions ... compose the punishment at issue." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

As the panel recognized, no simple concise definition of cruel and unusual punishment has been offered by the courts, and perhaps none can be. As put by Justice Douglas in *Robinson v. California*, 370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758 (1962) (Douglas, J., concurring), "The Eighth Amendment expresses the revulsion of civilized man against barbarous acts— the 'cry of horror' against man's inhumanity to his fellow man." Nor are the guidelines for eighth amendment determinations immutable. Their application by civilized people must take into account "broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Campbell v. Cauthron*, 623 F.2d 503, 505 (8th Cir. 1980) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)); *see also Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir.1968).

As indicated, before the panel the eighth amendment issues entailed consideration, singly and together, of recreational opportunities, double celling and use of boxcar doors. But with due respect to all concerned it must be said that the battle was fought and the panel decision rendered largely upon the use of boxcar doors. While the panel opinion was calculated to hold that the totality of the circumstances dictated a finding of unconstitutionality, *Rhodes*, 452 U.S. at 362–63, 101 S.Ct. at 2407, and *Villanueva v. George*, 659 F.2d 851, 854 (8th Cir.1981) (en banc), unfortunately the opinion can be read, perhaps not unfairly, as overemphasizing the use of boxcar doors and perhaps diminishing other factors such as length of recreation periods, double celling and indeed length of time between reviews of assignments to SMF.

The author of the panel opinion confesses that the opinion may be open to the charge. Fortunately, however, "precedent ... is not lacking for ways by which a judge may recede from a prior opinion that has ... perhaps misled others." *See McGrath v. Kristensen*, 340 U.S. 162, 177, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950) (Jackson, J., concurring). Paraphrasing Mr. Justice Jackson, if there are ways of gracefully receding from a misleading expression, all of them are invoked. *Id.* at 178, 71 S.Ct. at 233.

■ Returning now to the merits of the challenge to the use of boxcar doors, and the totality of the circumstances, we find that the case in part has become moot.

Of great concern to the panel was the practice of double celling on Level I of SMF behind boxcar doors. *Tyler*, 811 F.2d at 434. While double celling was not found to be unconstitutional, it was a disturbing factor when practiced behind boxcar doors for extended periods. However, subsequent to trial before the district court, and on rehearing en banc, we are authoritatively advised that the practice of double celling has been terminated. Thus, the issue has become moot and so much of the panel opinion as deals with double celling may be considered withdrawn and not of precedential value.

---

**2.** The "boxcar" door as used in SMF is a solid metal door opening onto an internal corridor. It contains a plastic window through which a passing guard may observe the interior of the cell. Cells equipped with boxcar doors each have a closed window four feet long through which a prisoner may look upon the prison yard. The window at times has been said to be four inches wide and at other times has been said to be six inches wide. That difference in width is of no decisional significance here.

In other areas as well, different conditions now exist. Staff has been augmented so that security may be enhanced and both lighting and monitoring have been improved.

Some other alleged changes seem to be in dispute and are not verified before us. For example, it is said that SMF inmates now are permitted to have radio reception in the cells. On the other hand, a brief filed by the inmates states that the "dog trot" exercise areas for Level I inmates have been reduced to areas three feet wide and twenty feet long.

■ For present purposes, the significance of these changes serves to reinforce our decision to modify our opinion and to affirm. While, in evaluating a district court's determinations concerning the reasonableness of prison regulations that impinge on constitutional rights this court's review of the ultimate legal conclusion is plenary, *Hill v. Blackwell*, 774 F.2d 338, 343 (8th Cir.1985), it is important that our decision be limited to relevant facts. Moreover, "we are keenly aware ... that federal courts owe great deference to the expertise of the officials who perform the always difficult and often thankless task of running a prison." *Salaam v. Lockhart*, 856 F.2d 1120, 1122 (8th Cir.1988).

Our recession in part from the views of the panel and our stated deference to penal authority, however, sound no retreat, *cf. Rhodes*, 452 U.S. at 353, 101 S.Ct. at 2402 (Brennan, J., concurring), from this circuit's policy of careful judicial scrutiny of prison conditions that has obtained for more than twenty years, *Villanueva*, 659 F.2d at 857 (Henley, J., dissenting); nor should it be taken to suggest that we are to render nugatory the eighth amendment by permitting it to sink into a state of innocuous desuetude. *Cf. Novak v. O'Neal*, 201 F.2d 227, 232 (5th Cir.1953) (Hutcheson, C.J., dissenting).

We continue to be concerned about the possible combination of delayed review procedures, long incarceration, and minimal exercise, particularly for those, if any, who are held at Level I primarily because of lack of room elsewhere. However, resolution of those problems for individual inmates doubtless can and will be addressed either within the prison administration or in individual lawsuits. Our concern does not militate against our decision to resolve this action, which we have addressed as essentially one for class relief, by affirmance of the judgment of the district court.

From what has been said, it follows that the panel opinion to the extent herein based upon moot factors is withdrawn; the panel conclusion of an eighth amendment violation on account of the totality of circumstances existing on Level I is vacated; the remainder of the panel opinion, not modified, vacated or withdrawn, is adopted; and the judgment of the district court in all things is affirmed.

LAY, Chief Judge, with whom HEANEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge, join, concurring and dissenting.

I adhere to our earlier finding in the panel opinion, *Tyler v. Black*, 811 F.2d 424 (8th Cir.1987), and reheard September 15, 1987. In that opinion we stated as follows:

> We find that in the totality of the circumstances, the use of boxcar doors on either *single* or double cells on Level I constitutes cruel and unusual punishment and violates the eighth amendment.

811 F.2d at 434. (Emphasis added).

Our earlier opinion continued:

> The words of the district court in *Bono* [*v. Saxbe*, 450 F.Supp. 934 (E.D.Ill., 1978)] are applicable here.
>
> > The most odious characteristic [in the control unit] ... was the closed-front cell, the boxcar. An inmate would spend nearly every minute of every day in his cell, cut off from any contact with the outside world—even the limited "outside world" of the incarcerated felon. The inmates' existence was limited by the space of his cell and the approximately three feet beyond the cell bars, at which point the outer wall was erected. These walls contained but a small window in the door. Even though the inmate could

express a preference as to whether the outer door would be open or closed, the correctional officer had the final say in the matter.

The sensory deprivations occasioned by use of the boxcars ... resulted in both mental and physical deterioration. Simultaneously, unnecessary pain and suffering was the result.

450 F.Supp. at 946–47 (footnote omitted).

While the cells in SMF are larger than the cells in *Bono* (eighty-eight square feet compared to fifty-two square feet, respectively), in SMF it appears that the boxcar doors are the only doors on Level I cells, and they must therefore be left closed at all times. Due to limited recreation on Level I, inmates spend at least twenty-three hours a day in these closed cells, and since case reviews can take place at up to ninety-day intervals, inmates can spend several months in Level I cells. "[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Hutto v. Finney*, 437 U.S. 678, 686 [98 S.Ct. 2565, 2571, 57 L.Ed.2d 522] (1978). In *Hutto* the Supreme Court upheld the decision of the district court that a prisoner in the Arkansas penal system could not be confined in punitive isolation for more than thirty days at a time. *Id.* at 688 [, 98 S.Ct. at 2572]. We are not suggesting that confinement on Level I of SMF constitutes punitive isolation in its worst form and we are certainly not suggesting that conditions on Level I approach those discussed in *Hutto*. There are, however, limits to what a prisoner must endure, and being confined in a closed front cell in the circumstances present on Level I for what could potentially be several months constitutes cruel and unusual punishment.

\*   \*   \*   \*   \*   \*

We therefore find that in the totality of the circumstances, appellees' use of boxcar doors on Level I of SMF violates the eighth amendment. We remand to the district court for determination of a remedy, and, in light of their good faith efforts throughout this case, we suggest that appellees be allowed to propose a plan that they feel will be best for correcting this violation. One possible solution would be the installation of standard cell bars inside of the boxcar doors. The boxcar doors could then be closed only when necessary.[7]

[7] As discussed, the cells in *Bono* were equipped with standard bars inside of the boxcar doors. It was therefore possible to leave the boxcar doors open on those cells. The district court enjoined the continued, nonconsensual closure of the boxcar doors, *Bono*, 450 F.Supp. at 947, and, in a later round of the same case, held that a constitutional plan governing the closure of the boxcar doors would be one in which:
(a) the discretion of the [facility manager] to close an outer door is limited by a written rule providing under what circumstances it will be closed; (b) [the inmate is informed of] the reason for the closing of the outer door and under what conditions it shall be reopened; and (c) [there is] some form of review to assure the discretion of the [facility manager] is being properly exercised.
*Bono v. Saxbe*, 527 F.Supp. 1187, 1192 (S.D. Ill.1981). Should appellees choose to remedy the violation we have found by installing standard bars inside of the boxcar doors, we feel that they should follow this basic framework in establishing a policy for the closure of the outer doors. This will protect inmates on Level I from further constitutional violations in the form of arbitrary or undue lengthy closure of the boxcar doors.

811 F.2d at 434–35. As the foregoing portions of the earlier opinion indicate, in this case, the use of boxcar doors on Level I cells violates the precepts of the eighth amendment.

Although it appears that the penitentiary has eliminated double celling, our earlier opinion concerns the use of boxcar doors on *either* single or double cells on Level I. If double celling has now been reinstituted since our earlier opinion, petitioner should assert these facts in any petition for reconsideration. Nonetheless, notwithstanding the abandonment of double celling, it is apparent to me that the use of the boxcar doors violates basic standards of decency and constitutes cruel and unusual punishment in the totality of circumstances at the Missouri State Penitentiary.