NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3020
_____

UNITED STATES OF AMERICA

v.

RAHSEEM DRUMMOND,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of  Pennsylvania
District Court  No. 1-09-cr-00159-001
District Judge: The Honorable Yvette Kane

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 17, 2012

Before: SMITH, and FISHER, *Circuit Judges*
and STEARNS, *District Judge**

(Filed: May 18, 2012)

_____

OPINION

_____

*The Honorable Richard G. Stearns, United States District Judge for the United
States District Court of Massachusetts, sitting by designation.

STEARNS, *District Judge.*

On December 2, 2010, Rahseem Drummond pled guilty to two counts of using a communication facility in furtherance of drug trafficking, 21 U.S.C. § 843(b). On July 18, 2011, the District Court sentenced Drummond to ninety-six months in custody, one year of supervised release, and a $1,000 fine. Drummond raises two issues on appeal: whether inculpatory statements he made to law enforcement agents should have been suppressed because he was not informed of his *Miranda* rights[1] prior to the interrogation, and whether the sentence imposed was unreasonable under the circumstances. We will affirm the District Court.

BACKGROUND

Because we write exclusively for the parties, we set forth only those facts and procedural aspects that are relevant to our decision. In early 2009, the Cumberland County Drug Task Force learned from several informants that Rahseem Drummond was importing marijuana from New Jersey for resale in the Chambersburg and Shippensburg area. Among the informants was Drummond's (then) girlfriend, Channel Thomas, who also confided that Drummond was in possession of a sawed-off shotgun and a handgun. Thomas admitted to accompanying Drummond regularly on his supply runs to New Jersey.

On May 5, 2009, another confidential source (CS) told the investigators that

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Drummond was planning a trip to New Jersey the following day to purchase crack cocaine and marijuana. Agents assisted the CS in renting a Chevrolet Impala to lend to Drummond for the New Jersey trip, and implanted the vehicle with a GPS device. On the evening of May 5, Drummond, accompanied by Thomas and Orson Adams, a co-defendant, drove the Impala from Chambersburg to a hotel in St. Thomas, Pennsylvania. There Drummond gave Thomas a large sum of cash to purchase drugs. Leaving the Impala for the two couriers, Drummond took Thomas's car and drove himself home.[2] Thomas and Adams continued on to New Jersey.

On May 9, 2009, the CS alerted investigators that Thomas and Adams were on the way back to Chambersburg from New Jersey. At the investigators' request, Pennsylvania State Troopers stopped the Impala on Interstate 81 and confiscated several pounds of marijuana from the trunk. At the Harrisburg State Police barracks, while being booked, Thomas admitted to having what proved to be 99.7 grams of crack cocaine in her pants.

In coordination with the stop of Thomas and Adams, the investigators, led by Drug Enforcement Administration (DEA) Agent Keith Kierzkowski, stopped

---

[2] It appears that Thomas' car was already parked at the hotel in St. Thomas. *See* App. at 82.

3

Drummond in a car driven by Kierra Rice.[3] Drummond was placed under arrest, and after being told of the arrest of Thomas and Adams, stated that he would "take the hit for the weed but not the crack." At this point, investigators had yet to learn that Thomas had crack cocaine in her possession.

On May 13, 2009, a federal grand jury indicted Drummond, together with Thomas, Adams, and another conspirator, Carolyn Stratum, with multiple counts of federal drug crimes.[4] On May 26, 2010, a second superseding indictment charged Drummond with seven counts, including two use of communication facilities counts to which he eventually pled guilty.

Prior to pleading guilty, Drummond sought to suppress both his post-arrest statements and the crack cocaine and marijuana seized from the rented Impala. On February 4, 2010, after an evidentiary hearing, the District Court denied both motions to suppress and scheduled the case for trial. In December of 2010, Drummond entered into a plea agreement with the government. Under the terms of the agreement, Drummond was permitted to plead guilty to the two use of

---

[3] Rice was found to have marijuana hidden in her purse and bra. She told investigators that Drummond had given the drugs to her and that on several occasions Drummond had hired her to drive to New Jersey to pick up marijuana.

[4] A superseding indictment adding a fifth defendant, Jason Morris, was returned on July 29, 2009.

4

facilities counts with respect to the marijuana only.[5]  Both Drummond and the government reserved the right to contest the issue of Drummond's responsibility for the crack cocaine at sentencing.  Drummond also reserved the right to appeal the District Court's suppression rulings.

## DISCUSSION[6]

### *Drummond's Motion to Suppress[7]*

On appeal, Drummond challenges only the refusal of the District Court to suppress the incriminating statement that he made to Agent Kierzkowski after his arrest.[8]  The essence of Drummond's argument is that there is no affirmative proof that he was informed of the entirety of his *Miranda* rights.  According to Drummond, the record establishes only that Agent Kierzkowski "read Mr.

---

[5] The government agreed to dismiss the remaining five counts of the indictment.

[6] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[7] We review "the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[ ] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)).

[8] Agent Kierzkowski testified that after he told Drummond that Thomas had been arrested as well, he "said something to the effect of, I'll take the hit for the weed, but I'm not going to take the hit for the crack, and that he's a weed guy and he sells weed, he has nothing to do with what's in that vehicle." App. at 69.

Drummond his rights from a DEA 13A card. However, Agent Kierzkowski never specified what he told Mr. Drummond. Also, a DEA 13A card was never entered into the record." Appellant's Br. at 21. Given this void, the argument continues, the District Court abused its discretion in rejecting Drummond's countervailing testimony that he was never told of his right to remain silent or to consult with an attorney.

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. While "admissions of guilt by wrongdoers, if not coerced, are inherently desirable," *United States v. Washington,* 431 U.S. 181, 187 (1977), the Supreme Court in *Miranda* "presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his *Miranda* rights and freely decides to forgo those rights." *New York v. Quarles,* 467 U.S. 649, 654 (1984).[9] The "*Miranda* rights," while not constitutionally compelled, have a "constitutional underpinning," and thus, they may not be rescinded by an act of Congress or be treated with anything but the most scrupulous regard by a

---

[9] The government does not contest the fact that Drummond was in custody when the incriminating statement was made.

reviewing court. *Dickerson v. United States*, 530 U.S. 428, 440 n.5, 444 (2000).

The *Miranda* warnings are as follows:

> "[A suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

*Miranda*, 376 U.S. at 479.

At the September 3, 2009 suppression hearing, Agent Kierzkowski testified that after Drummond was told that he was under arrest, Kierzkowski advised Drummond of his *Miranda* rights by reading from a DEA 13A card. "It's a *Miranda* warning waiver card. It is provided to us, and I read it verbatim off this yellow card that I usually carry around my neck with my badge."[10] App. at 68. Drummond, for his part, testified that the agents had pulled him from the car with guns drawn, thrown him to the ground, belittled him, and after he was handcuffed, Kierzkowski violently beat him before placing him in the State Police cruiser. He also testified that neither Kierzkowski nor any other officer advised him of his *Miranda* rights. *See id*. at 92-99. The District Court found Drummond's

---

[10] Agent Kierzkowski gave nearly identical testimony about his customary practice in reading the *Miranda* rights from his personal DEA 13A card in a separate case. *See United States v. Jones*, 2007 WL 4365741, at \*3 (M.D. Pa. Dec. 12, 2007). As in this case, the District Court in *Jones* credited his testimony and rejected the defendant's assertion that no *Miranda* warnings had been given.

7

testimony wholly incredible.[11]  By contrast, she found Kierzkowski's testimony persuasive and credible and thus denied the motion to suppress. *Id*. at 144.

This pretty much ends the matter.  Under the clear error standard, we will accept the District Court's factual determinations unless they are either (1) "completely devoid of minimum evidentiary support displaying some hue of credibility," or (2) "bear[ ] no rational relationship to the supportive evidentiary data."  *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972).  *See also United States v. Bethancourt,* 65 F.3d 1074, 1078 (3d Cir. 1995) ("[W]e will not review a district court's credibility determination.").  We find no error in the District Court's ruling, much less a clear one.

### *Drummond's Sentence*

Drummond argues that the District Court made both procedural and substantive errors in formulating his sentence.[12]  The 96-month sentence imposed

---

[11] The District Court stated that it was "not persuaded that Agent Kierzkowski punched Defendant in front of several other officers, including [Pennsylvania State Police] officers, for failing to respond to his un-*Mirandized* questioning.  Moreover, the Court is not persuaded by Defendant's testimony that he was not informed of the reasons for his arrest for several days – until his attorney arrived at the county jail – , that he asked for an attorney despite all officers' failure to inform him of his rights, or that any incriminating statements were completely fabricated by Agent Kierzkowski." *Id*. at 144.  The District Court also noted that Drummond had shifted his version of the supposed assault during his testimony and found that his "demeanor was unconvincing." *Id*.

8

by the District Court consisted of consecutive terms of imprisonment of 48 months on each of the two counts to which Drummond pled guilty. Drummond contends that the District Court miscalculated the sentencing guidelines range (SGR) and improperly weighed the 18 U.S.C. § 3553 factors.[13] Specifically, he faults the District Court for: (1) holding him responsible for the 99.7 grams of crack cocaine seized from Thomas; (2) applying a two-level increase for possession of a deadly weapon; (3) applying a four-level increase for his supervisory role; (4) denying any credit for acceptance of responsibility; (5) declining to depart downward in recognition of the harsh conditions of his confinement at the Dauphin County jail; (6) declining to vary based on the lower sentences received by his co-defendants; and (7) declining to vary because of alleged "sentencing entrapment."

We recently explained that

> "Our review of a criminal sentence . . . proceeds in two stages. First, we review for procedural error at any sentencing step, including, for example, failing to make a correct computation of the Guidelines range at step one, failing to rely on appropriate bases for departure at step two, or failing to give meaningful consideration to the § 3553(a) factors at step three." [*United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011)] (internal citations and quotations omitted). "If there is no

---

[12] "The abuse-of-discretion standard applies to both [the] procedural and substantive reasonableness inquiries." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (citations omitted).

[13] Based on Drummond's offense level of 34 and criminal history category IV, the SGR was calculated at 210-262 months; however, because of the statutory maximum of four years on each use of communications facilities count, the SGR was capped at 96 months.

procedural error, the second stage of our review is for substantive unreasonableness, and we will affirm the sentence unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id*. [citations omitted].

*United States v. Fumo*, 655 F.3d 288, 308 (3d Cir. 2011).

The alleged errors can be disposed of in quick order. The attribution of the crack cocaine found on Thomas to Drummond was reasonable given the predictive information supplied to Agent Kierzkowski by the CS (that he had been told by Drummond that Thomas and Adams had begun the journey back from New Jersey after successfully purchasing marijuana and crack cocaine), Thomas's confirmatory testimony at the sentencing hearing regarding the trip to New Jersey, and Drummond's blurting out on his arrest that "he wouldn't take the hit for the crack" before any of the officers had told him that crack had been seized.[14] While some of the information on which the District Court relied was hearsay, as Drummond acknowledges, reliable hearsay is admissible at a sentencing hearing. Appellant's Br. at 29. The hearsay at issue here had the virtue of being not only internally cross-corroborating, but also corroborated by external events. *See United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001) ("One factor evidencing the

---

[14] Thomas testified that the day prior to the New Jersey trip, she overheard Drummond and Adams talking about "how much money they can make . . . if they brought it [crack cocaine] back."

reliability of hearsay statements . . . is external consistency."). *See also*

*United States v. Brothers*, 75 F.3d 845, 848 (3d Cir. 1996) (quoting *United*

*States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993) ("The sentencing court can

give a high level of credence to hearsay statements, going so far as to 'credit

hearsay evidence over sworn testimony, especially where there is other

evidence to corroborate the inconsistent hearsay statement.'")).[15]

A four-level increase based on a leadership role in a criminal

enterprise is warranted "[i]f the defendant was an organizer or leader of a

criminal activity that involved five or more participants *or was otherwise*

*extensive . . . .*" United States Sentencing Guidelines (USSG) § 3B1.1

(emphasis added). Drummond's argument that he did not supervise five or

more criminal subordinates is beside the point. Whether Keirra Rice, Jason

Morris, and Paul Galdfelter[16] (who seem to have been peripheral players) are

counted in or out of the conspiracy, it was not unreasonable for the District

---

[15] Reliable hearsay also supported the two-level enhancement for possession of a deadly weapon. Thomas testified that Drummond owned at least two guns – one of which she distinctly remembered because Drummond used it to threaten her during a domestic argument. She also testified that on most occasions he carried a weapon (a knife) when they travelled to New Jersey to buy marijuana. The Presentence Report noted that three other witnesses had told investigators that they had seen Drummond in possession of firearms on numerous occasions.

[16] Galdfelter was another actor involved in Drummond's illegal dealings.

Court to have found Drummond's interstate drug trafficking activity "extensive."

Similarly, it was not an abuse of discretion to refuse to give Drummond credit for acceptance of responsibility. A guilty plea does not guarantee a defendant the two-level decrease in his offense level otherwise authorized by USSG § 3E1.1. "[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG § 3E1.1, Application Note 1(a). Having determined that Drummond lied under oath about the crack cocaine, the District Court was well within its discretion in concluding that Drummond had failed to accept full responsibility for his criminal conduct. *See United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir. 1996) ("[T]he Guidelines make clear that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.'") (quoting USSG § 3E1.1, Application Note 5).

Finally, the District Court did not abuse its discretion by failing to properly weigh the § 3553(a) factors.[17]  With respect to the potential sentencing disparity between co-defendant Adams and Drummond, the District Court questioned the prosecutor and declared her satisfaction with the explanation that Adams had received a significantly lesser sentence recommendation based on willingness to cooperate with the DEA. Drummond's complaints about his conditions of confinement at the Dauphin County jail might find their place in an appropriate § 1983 due process action, *see Villanueva v. George*, 659 F.2d 851, 853-854 (8th Cir. 1991), but as the District Court indicated, they have little if any relevance to punishment after conviction.  Finally, Drummond's theory of "sentencing entrapment," like its twin theory of "sentencing factor manipulation," has yet to be formally recognized in this Circuit, and we decline to consider it in a case like this one, where the facts would not support application of the theory even were we to adopt it.  *See United States v. Sed*, 601 F.3d 224, 229

---

[17] "[A]n appellate court reviews a sentence for reasonableness with regard to the factors set forth in 18 U.S.C. § 3553(a). . . .  In order for a sentence to be reasonable, the record must demonstrate that the sentencing court gave 'meaningful consideration' to these factors."  *United States v. Bungar*, 478 F.3d 540, 542-543 (3d Cir. 2007) (internal citation omitted).

(3d Cir. 2010).[18] Discerning no procedural error in the imposition of Drummond's sentence, we also find no substantive error. *See Tomko*, 562 F.3d at 568 ("[I]f the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.").[19]

Consequently, we will affirm the judgment of the District Court.

---

[18] Sentencing manipulation theories have had a largely hostile reception in other circuits. *See United States v. Gibbens*, 25 F.3d 28, 31 (1st Cir. 1994); *United States v. Washington*, 44 F.3d 1271, 1279-1280 (5th Cir. 1995); *United States v. Garcia*, 79 F.3d 74, 76 (7th Cir. 1996); *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995); *United States v. Lacey*, 86 F.3d 956, 963 (10th Cir. 1996); *United States v. Williams*, 954 F.2d 668, 672-673 (11th Cir. 1992); *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995).

[19] It must be noted that Drummond received a significant discount in his potential sentence because of the government's decision to dismiss the five more serious charges as part of Drummond's plea agreement. That decision effectively capped Drummond's sentence at 96 months, roughly 45 percent of the 210-month advisory minimum under the properly calculated SGR.