**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14063

Non-Argument Calendar

_____

JUAN FRANCISCO VEGA,

*Plaintiff-Appellant,*

*versus*

JON P. CARNER,
DAKOTA CARDENAS,

*Defendants-Appellees,*

JOHN DOE, et al.,

*Defendants.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00202-SPC-KCD

_____

Before KIDD, BLACK, and WILSON, Circuit Judges.

PER CURIAM:

Juan Vega, a civil detainee at the Florida Civil Commitment Center ("FCCC") proceeding *pro se*, sued (1) Jon Carner, an FCCC administrator, and (2) Dakota Cardenas, an FCCC guard, under 42 U.S.C. § 1983. Vega asserted that Carner and Cardenas violated his Fourteenth Amendment substantive due process rights by (1) removing him from the FCCC general population and placing him into the "Special Management Unit" based on a pending criminal investigation into whether he had attempted to defraud other detainees, and (2) failing to provide him prompt medical care when he removed the stitches from a surgical incision after a recent pacemaker operation.

The district court granted summary judgment to Carner and Cardenas as to both claims. Vega appeals that grant. After review,[1] we affirm.

## I. DISCUSSION

*A. Special Management Unit*

"Under the Fourteenth Amendment, those who are civilly committed enjoy a substantive-due-process right to liberty interests in, among other things, safety and freedom from bodily restraint." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 912 (11th Cir. 2020) (citing *Youngberg v. Romeo*, 457 U.S. 307 (1982)). "Nevertheless, a

---

[1] "We review de novo a district court's grant of summary judgment, viewing all evidence and drawing all reasonable factual inferences in favor of the non-moving party." *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024) (quotation marks omitted).

civilly committed individual's right to freedom from bodily restraint is not absolute." *Id.* "We apply a balancing test to determine whether a State's restraints on a civilly committed person violate that individual's substantive-due-process rights. In particular, we balance the person's liberty interests against the reasons the State sets forth for restricting the individual's liberty." *Id.* "When we do so, we keep in mind that those who have been involuntarily civilly committed are due a higher standard of care than those who have been criminally committed, since the conditions of confinement for the criminally committed are 'designed to punish,' but those of the civilly committed are not." *Id.* (quoting *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996)).

When conducting the necessary balancing, we must consider whether "'professional judgment in fact was exercised' in the times and way the institution restrains the [civilly detained] person's liberty." *Id.* (quoting *Youngberg*, 457 U.S. at 321). Under this standard, the decision to restrict the civil detainee's liberty, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323 (footnotes omitted).

Vega asserted that Carner violated his substantive due process liberty rights by removing him from the general FCCC population and placing him in the more restricted Special Management

Unit.[2]  Vega did not challenge any specific condition of the Special Management Unit but rather contended that his placement in that Unit for an "indefinite" period of time was unconstitutional.

Applying the "professional judgment" standard, we do not consider Carner's decision to place Vega in the Special Management Unit to be unconstitutional.  The decision to remove Vega from the general FCCC population was based on the fact that state authorities were criminally investigating whether Vega had attempted to defraud multiple other detainees.  The FCCC's policy of placing detainees who are being criminally investigated in more restrictive conditions is based on a legitimate state interest in protecting other detainees and ensuring that the object of the investigation is sufficiently secured.  This interest is particularly relevant in Vega's case because his purported victims were other vulnerable detainees.

In light of this strong interest, the conditions of Vega's placement in the Special Management Unit were not unduly restrictive. The uncontested record evidence established that while in the Special Management Unit, Vega had access to common areas, daily fresh air, legal computer time, recreation, communal religious services, and off-unit treatment groups.  Vega did not submit any evidence even suggesting that the conditions of his detention were similar to those that courts have found to be unconstitutional.

---

[2] Vega referred to the Unit as the "Behavior Management Unit" throughout the proceedings.  The dispute over the name of the Unit is immaterial as it does not affect the relevant legal analysis.

*See, e.g.*, *Bilal*, 981 F.3d at 914-16 (holding that complaint alleging that guards required a civil detainee to sit in fecal matter for several hours during a 600-mile road trip without a bathroom stop stated a claim under the Fourteenth Amendment); *West v. Schwebke*, 333 F.3d 745, 747-49 (7th Cir. 2003) (holding that civil detainees' Fourteenth Amendment rights were violated because they were held in seclusion cells for many days, were only let out for one hour per day in shackles, and were not provided with essential amenities); *Villanueva v. George*, 659 F.2d 851, 853-55 (8th Cir. 1981) (holding that pretrial detainee's Fourteenth Amendment rights were violated because he was kept in a cell measuring six feet by six feet that was infested with insects and rodents without regular opportunity for exercise or showers).

Further, the duration of Vega's placement in the Special Management Unit was not unconstitutional. *See Seling v. Young*, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions *and duration* of [civil] confinement . . . bear some reasonable relation to the purpose for which persons are committed." (emphasis added)). Vega's placement in the Special Management Unit from February to December 2021, which was limited in time to the duration of the ongoing criminal investigation, was not unreasonable given the state's strong interests and the relatively limited nature of the liberty restrictions.

Viewing all of the evidence in the light most favorable to Vega, there is insufficient evidence from which a reasonable jury could conclude that Carner's presumptively valid decision to place

6                    Opinion of the Court                    24-14063

Vega in the Special Management Unit because of the pending crim-
inal investigation was not "such a substantial departure from ac-
cepted professional judgment, practice, or standards." *See Young-
berg*, 457 U.S. at 323. Therefore, the district court did not err by
granting summary judgment to Carner as to this claim.[3]

## B. Stitches Incident

The Fourteenth Amendment Due Process Clause also pro-
tects civil detainees from the deliberate indifference of state officials
to their serious medical needs in a similar way that the Eighth
Amendment protects the medical rights of criminally convicted
prisoners. *See Dolihite*, 74 F.3d at 1041. Although civil detainees are
due a higher standard of care regarding medical treatment under
the Fourteenth Amendment than are criminal prisoners under the
Eighth Amendment, Eighth Amendment deliberate-indifference
precedent is relevant for analyzing a similar claim under the Four-
teenth Amendment. *See id.*; *see also Keith v. DeKalb Cnty.*, 749 F.3d
1034, 1044 n.35 (11th Cir. 2014) (explaining that because a pretrial
detainee's medical rights under the Fourteenth Amendment are at
least as great as those of a criminal prisoner under the Eighth

---

[3] Vega also argues on appeal that the FCCC's policy to place detainees who
are being criminally investigated in more restrictive conditions than the gen-
eral population is facially unconstitutional. However, as the district court
noted, Vega raised that claim for the first time in response to Carner and Car-
denas's summary judgment motion, so it is not properly before us. *See Gilmour
v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313-15 (11th Cir. 2004) (holding that
a plaintiff cannot raise a new legal claim for the first time in response to the
opposing party's summary judgment motion).

Amendment, the standard under both Amendments is the same); *Brennan v. Cass Cnty. Health, Hum. & Veteran Servs.*, 93 F.4th 1097, 1101-02 (8th Cir. 2024) ("Courts apply the deliberate indifference standard from the Eighth Amendment when analyzing a civilly committed individual's Fourteenth Amendment claim of constitutionally deficient medical care.").

"To prevail on a claim of deliberate indifference to [a] serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citation modified).

In the Eighth Amendment context, this Court sitting *en banc* explained that to satisfy the second prong—which concerns the defendant's subjective state of mind—"the plaintiff must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,' and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc) (citation omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference

from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Vega argued that Carner and Cardenas were deliberately indifferent to a serious medical need by failing to promptly provide him medical care when he ripped out stitches from a surgical incision after a recent operation to replace his pacemaker. It is undisputed that on September 9, 2021, Vega returned to the FCCC after the surgery was conducted at an outside hospital. The parties contest whether Vega ripped out the stitches in front of Cardenas, so we must accept Vega's version of the facts that he did in fact rip the stitches out in front of Cardenas.[4] *See Brooks v. Miller*, 78 F.4th 1267, 1271 (11th Cir. 2023) ("[O]n a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party—meaning we accept the nonmoving party's version of events if the parties disagree about what happened.").

Nevertheless, it is uncontested that after that point Cardenas contacted Carner who decided to place Vega in an observation cell where he was monitored every thirty minutes by FCCC guards. Further, it is undisputed that when Vega's surgical incision reopened early the next morning, as soon as the problem was brought to the attention of the FCCC guard who was monitoring Vega, that

---

[4] The defendants assert that Vega merely threatened to pull out the stitches and did not actually do so in Cardenas's presence.

guard alerted medical personnel, and Vega was promptly provided with complete medical care.

Viewing all of the evidence in the light most favorable to Vega, which includes accepting his position that he pulled the stitches out in front of Cardenas, there is insufficient evidence from which a reasonable jury could conclude that Cardenas and Carner acted with subjective recklessness in response to Vega's actions.

To satisfy the subjective prong of the deliberate-indifference standard, a plaintiff must submit evidence showing that he was evidently in pain or in clear need of immediate medical care to prove that the defendant knew that by not promptly providing him with such care the defendant was placing him at a substantial risk of serious harm. *See Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990) (holding that plaintiff established deliberate indifference based on his broken foot where he limped and hopped in the presence of the defendant, his foot swelled severely, and he told the defendant that his foot felt like it was broken); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1325-29 (11th Cir. 2007) (holding that plaintiff established deliberate indifference based on an amniotic leak during pregnancy that resulted in her fetus's death where she had been leaking fluid for nine days, she reported that the problem was growing worse, and the jail doctor recognized that she needed to see an outside doctor); *Valderrama v. Rousseau*, 780 F.3d 1108, 1115-20 (11th Cir. 2015) (holding that plaintiff established deliberate indifference based on a gunshot wound where officers delayed

10                Opinion of the Court                24-14063

providing him medical treatment despite the obvious risks associated with such wounds).  Vega did not submit sufficient evidence on this ground.

There is no evidence that at the time Vega pulled out the stitches he was bleeding to any significant extent, complained of any pain or discomfort, requested medical assistance, or that the surgical incision had reopened.  There is also no evidence about how large the incision was, the extent to which Cardenas actually saw the incision, whether the incision appeared inflamed or had other noticeably concerning features, or any other details suggesting that Vega was suffering significant pain or was in need of immediate medical attention.

The only evidence that Vega submitted to support his contention that the defendants acted with subjective recklessness was his statement in his affidavit that he "yanked out the stitches from the heart surgery and told Dakota Cardenas that he could have them," which was not accompanied by additional details.  That bare statement on its own is insufficient to support Vega's deliberate-indifference claim because, without evidence that Vega was obviously in physical pain or in need of immediate medical attention, it would not be reasonable for a jury to conclude that Cardenas or Carner subjectively believed that they were placing Vega at a substantial risk of serious harm by failing to provide him medical attention at that time.  *See Young v. City of Palm Bay*, 358 F.3d 859, 860

24-14063                Opinion of the Court                11

(11th Cir. 2004) ("A mere scintilla of evidence in support of the non-moving party will not suffice to overcome a motion for summary judgment.").

The undisputed record evidence establishes instead that Cardenas and Carner did not act with subjective recklessness as to Vega's medical needs. The only disputed fact is whether Vega pulled out his stitches in front of Cardenas. Everything else is undisputed, including that Cardenas alerted Carner about the situation and that Carner placed Vega in an observation cell where FCCC guards would check on him every thirty minutes to ensure that he did not commit self-harm and to monitor whether he needed medical assistance. Those were not acts of subjective recklessness, but instead were acts specifically designed to protect Vega and ensure that he would receive help if needed. In fact, when Vega's surgical wound ultimately reopened after he rolled over on it in the middle of the night, it is undisputed that the FCCC guard who was tasked with regularly monitoring Vega contacted medical personnel as soon as he discovered the issue such that Vega received prompt and complete medical care.

In sum, a reasonable jury could not conclude that Cardenas and Carner acted with subjective recklessness towards Vega because (1) there is insufficient evidence establishing that Cardenas or Carner knew that they might be placing Vega at a substantial risk of serious harm by not contacting medical personnel when he

pulled out his stitches, and (2) the undisputed evidence in fact supports the conclusion that Cardenas and Carner took actions to help Vega and ensure that he received medical care when he needed it.

For those reasons, Vega failed to satisfy his burden of production as plaintiff to survive summary judgment. *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("[A] pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."). Therefore, the district court did not err by granting summary judgment to Cardenas and Carner as to this claim.

## II.  CONCLUSION

The district court did not err by granting summary judgment to Carner and Cardenas as to Vega's Fourteenth Amendment claims. Accordingly, we affirm the district court.

**AFFIRMED.**