**Thomas LIVERSEED, Jr., by Ralph LIVERSEED, his legal guardian, Plaintiff,**

v.

**COUNTY OF RICE, Cea Grass and Mark Shaw, Defendants.**

Civil No. 4–95–625.

United States District Court, D. Minnesota, Fourth Division.

Sept. 18, 1997.

---

1. Docket No. 2.

2. Docket No. 5.

Dean A. LeDoux, Gray, Plant, Mooty, Mooty & Bennet, P.A., Minneapolis, MN, for plaintiff.

Mark J. Condon, Paul S. Hopewell, Johnson & Condon, P.A., Minneapolis, MN, for defendants.

TUNHEIM, District Judge.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Ralph Liverseed brought civil rights and tort claims on behalf of his disabled brother Thomas Liverseed against defendants Rice County and two of its social service employees for transporting Thomas without authorization on two occasions in November 1993. Defendants moved for summary judgment on all claims. For the reasons set forth below, their motion is granted.

## BACKGROUND

Thomas Liverseed is a sixty-four-year-old man with severe mental retardation and ambulatory disabilities. He needs supervision at all times. For most of his life, his mother Elizabeth Liverseed cared for him. In October 1992, she moved to the Pleasant Manor Nursing Home in Faribault, Minnesota. During the following year, Thomas stayed in his mother's home,[1] where family members or persons hired by family members took care of him at all hours.

Beginning in October 1992, Thomas' brother Ralph, his legal guardian, requested assistance from the Rice County Department of Social Services (RCSS or the County). Specifically, Ralph requested that the County place Thomas at Pleasant Manor Nursing home where their mother had moved. In November 1992, the Minnesota Department of Human Services (MNDHS) informed RCSS that Thomas was not eligible for long-term nursing care benefits. Ralph appealed this decision. A Referee of the MNDHS conducted an investigation pursuant to Minn. Stat. § 256.045, subd. 3 and recommended reversal. However, in April 1993, the Chief Appeals Referee of the MNDHS overturned this recommendation. Ralph obtained counsel to continue his appeal.

On October 14, 1993 Ralph informed RCSS that he would no longer be responsible for Thomas' supervision, and that he would not provide for housing after the end of that week. RCSS continued to look for a residential placement, but it found none acceptable to Ralph. RCSS proposed a short-term solution of placement at the Prairie Ridge Adult Foster Home (Prairie Ridge), a respite care facility. RCSS told Ralph that Thomas could not stay there for more than two days, after which Ralph would have to either authorize other services or resume providing care himself. Thomas entered Prairie Ridge on October 29, 1993. Two days later, Ralph did not return to pick up Thomas. The RCSS case manager assigned to Thomas, defendant Mark Shaw, attempted to contact Ralph without success. Shaw, with the consent and approval of his supervisor, defendant Cea Grass, took Thomas to the RCSS offices for part of the day, where Thomas was left unsupervised at times. This caused Thomas to cry and become agitated. Then Shaw arranged to add a day to Thomas' stay at Prairie Ridge, although Shaw had to supervise Thomas himself.

On November 2, 1993, Shaw and Grass, met with Ralph Liverseed and his wife Darlene to discuss options for Thomas. They agreed that Thomas would stay at Prairie Ridge until November 8, 1993 while permanent arrangements were explored, but Ralph was told that Thomas could not stay there

---

1. Defendants' brief states that Thomas spent this year in Ralph's home. The discrepancy is not material to the motions before the Court.

past November 8. On November 8, Ralph again failed to pick up Thomas from Prairie Ridge. Shaw arranged for Thomas to stay until November 9, but Prairie Ridge refused to provide care after that morning. Grass discussed options with Ralph, but he rejected all of her suggestions for alternative residences.

On November 9, 1993, Grass directed Shaw to take Thomas to Pleasant Manor Nursing Home where he could visit his mother for the day while the staff there would look after Thomas. Ralph did not consent to this "visit." Shaw took Thomas from Prairie Ridge to Pleasant Manor. Later that afternoon, a nurse at Pleasant Manor informed Shaw that no one had come to pick up Thomas from Pleasant Manor. Shaw arranged for Pleasant Manor to care for Thomas as a guest for the remainder of the day. Grass discussed the situation again with Ralph, who said he thought RCSS was responsible for Thomas since RCSS had taken him to Pleasant Manor.

RCSS had no authority to move Thomas without the direction and consent of Ralph, his legal guardian. Grass called an employee at Pleasant Manor and instructed that person to call either Rice County Crisis Line or the Faribault Law Enforcement Center and have the police take Thomas to the Faribault Regional Treatment Center (FRTC). Law Enforcement had authority to place Thomas there on a 72–hour hold. On November 10, 1993, Shaw assisted the police in moving Thomas to FRTC. Thomas was placed in a psychiatric unit, where there were several individuals that were "highly aggressive," which caused Thomas significant emotional distress.

Further discussions between county personnel and Ralph did not reach consensus. On November 15 (prior to the expiration of the 72–hour hold), Grass directed that Shaw would assist Faribault police in transporting Thomas from FRTC to Ralph's home, where Ralph would be given the option of keeping Thomas or authorizing his admission to FRTC. Ralph did not consent to this movement of Thomas.

Ultimately, in April 1994, Thomas was placed in Prairie Ridge. This was pursuant to the repeated requests of Ralph, and it was done despite defendants' earlier insistence that Prairie Ridge was not an appropriate long term placement option.

At no time did RCSS attempt to remove Ralph as the guardian, although it could have pursued this remedy. Plaintiff also complains that RCSS did not accept requests for conciliation.

The Complaint states claims under state tort law [2] and federal civil rights statutes, 42 U.S.C. §§ 1983, 1985(3), and 1986. The Complaint alleges that, by transporting Thomas without Ralph's consent on November 9 and November 15, 1993, all the defendants deprived Thomas of his right to liberty guaranteed by the Fourteenth Amendment and his right under the Fourth Amendment to be free of unreasonable searches and seizures. Defendants seek summary judgment on all claims.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is mandated when, after adequate time for discovery and upon motion, the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, on which that party would bear the burden of proof at trial. *Celotex Corp. v.*

---

**2.** The torts alleged are assault, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

*Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, a court is required to view the facts in the light most favorable to the nonmoving party, and the movant has the burden of establishing that no genuine issue of material fact remains and that the case may be decided as a matter of law. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The non-moving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir.1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981).

## ANALYSIS

### I. Civil Rights Claims

#### A. Claims under 42 U.S.C. §§ 1985 and 1986

■ To prevail upon a claim for conspiracy to deprive a person of constitutional rights under Section 1985(3), a plaintiff must prove:

(1) that defendants did "conspire;"

(2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws;"

(3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy;" and

(4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States."

*Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996) (quoting from 42 U.S.C. § 1985(3)). The second element of the claim requires plaintiff to prove that defendants acted upon an "invidiously discriminatory animus" against some class of persons. *Id.*

■ Plaintiffs argue that defendants acted upon a discriminatory animus against mentally ill or disabled people, but the assertion is based solely on defendants' conduct which is challenged in this lawsuit. The Court finds that this is not sufficient evidence to raise a genuine issue of fact that defendants harbor animus against mentally ill or disabled people. To the contrary, the defendant individuals have dedicated their professional lives to assisting such people.[3] Thus, summary judgment is granted on the claim under Section 1985(3).

Section 1986 creates a cause of action for failure to prevent or aid in preventing a violation of Section 1985. "Transgressions of § 1986 by definition depend on a preexisting violation of § 1985...." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3rd Cir.1994). Because the Court grants summary judgment as to the claim under Section 1985, the Court also grants summary judgment as to the claim under Section 1986.

#### B. Section 1983 Claims against the County

■ Civil rights claims against Rice County must be viewed under the principles that govern claims against municipalities. A city may only be found liable under Section 1983 if it deprived a plaintiff of constitutional rights through the implementation of a policy statement, ordinance, regulation, decision, or a custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). There is no municipal liability under Section 1983 for injury inflicted solely by a city's employees or agents. *Id.* at 694, 98 S.Ct. at 2037–38. Where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, a municipality may be held liable for a subse-

---

**3.** Similarly, there is no evidence that defendant individuals acted outside the scope of their employment by acting upon personal bias. Consequently, the Section 1985(3) claim must also be dismissed pursuant to the intracorporate conspiracy doctrine, which holds that a corpora-
tion—including a governmental entity—cannot conspire with itself through its agents when the acts of the agents are within the scope of their employment. *See Larson by Larson*, 76 F.3d at 1456 n. 6; *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir.1987).

quent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the constitutionally offensive acts. *Herrera v. Valentine,* 653 F.2d 1220, 1224 (1981). To prevail, a plaintiff must show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e. that the custom was the moving force behind the constitutional violation.

*Larson by Larson v. Miller,* 76 F.3d 1446, 1453 (8th Cir.1996).

■ Plaintiff argues that RCSS had a practice of ignoring the rights of the mentally disabled. The only evidence of this practice or custom is the course of conduct involving Thomas Liverseed. The evidence of this single chain of events does not raise a genuine issue of material fact that Rice County had a practice or custom of ignoring the rights of the mentally disabled. There is no evidence of a continuing, widespread, or persistent pattern of unconstitutional misconduct. Thus, the Court grants the County summary judgment as to the claim under Section 1983.

## C. Section 1983 Claims Against Individual Defendants

■ Any individual government officials performing discretionary functions have a qualified immunity defense to a Section 1983 claim for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine whether a defendant has violated a plaintiff's clearly established rights, it is necessary to inquire:

(1) which particular act or omission of the defendant violated the plaintiff's federal rights, and

(2) whether governing case or statutory law would have given a reasonable official cause to know, at the time of the relevant events, that those acts or omissions violated the plaintiff's rights.

*Myers v. Morris,* 810 F.2d 1437, 1444 (8th Cir.1987) (quoting *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (Brennan, J., concurring in part and dissenting in part)).

The Supreme Court has held that constitutional rights are not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Consequently, plaintiff cannot prevail on § 1983 claims merely by showing that defendants' alleged negligence violated his constitutional rights.

Individuals have a clearly established right under the Fourteenth Amendment to be free from bodily restraint; "the state cannot hold and physically punish an individual except in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 651–52, 97 S.Ct. 1401, 1402–03, 51 L.Ed.2d 711 (1977). The issue is whether the unauthorized transportation of Thomas on November 9 and November 15, 1993 violated this right.

Thomas, due to mental retardation, is in constant need of being held in the custody of other persons. Ordinarily, such a person is effectively in the custody of his legal guardian. Thus, plaintiff argues that since the guardian did not give consent to the movement of Thomas on November 9 and 15, 1993, any movement was undue restraint.

■ This argument ignores the facts of the situation. Thomas was pushed into the custody of the state by the conduct of his guardian, who neither carried out his own responsibilities nor authorized the state to pursue other reasonable options. Plaintiff has not demonstrated that there is clearly established federal law governing what a state official must do in such a situation.

Thus, defendants are entitled to summary judgment on the grounds that a reasonable official could not have known that the conduct challenged violated established federal rights.

■ Furthermore, the Supreme Court has recognized a separate good-faith immunity defense for mental health professionals, administrators, and professional staff of institutions that work with the mentally disabled. In a case involving an involuntarily confined mentally ill adult, the Supreme Court found that determining whether the substantive rights protected by the Fourteenth Amendment had been violated requires balancing the liberty interests of the individual with the demands of an organized society. *Youngberg v. Romeo,* 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982). The Supreme Court decided that the Constitution only requires that courts "make certain that professional judgment in fact was exercised." *Id.* at 321, 102 S.Ct. at 2461. Any decision regarding the well-being of a mentally disabled individual, if made by a professional, is presumptively valid, and liability may be imposed only when the decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462. A mental health professional, in this context, is one who is

> competent, whether by education, training, or experience, to make the particular decision at issue. Long term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology, physical therapy, or the care and training of the retarded. Of course, day-to-day decisions regarding care—including decisions that must be made without delay—necessarily will be made in may instances by employees without formal training but who are subject to the supervision of qualified persons.

*Id.* at 323 n. 29, 102 S.Ct. at 2462 n. 29.

The Court finds that Shaw and Grass were mental health professionals for the purposes of this immunity, and that they exercised professional judgment. Grass has a bachelor's degree in social work. Shaw has a bachelor's degree in psychology. Both have extensive training in dealing with mentally disabled adults, and both have over 15 years experience in the field. While their qualifications would not be appropriate for determining long-term medical treatment for a mentally disabled person, they have special training and experience relevant to the professional decisions they faced that are challenged in this case regarding the proper placement of mentally retarded adults among the facilities available in Rice County. Thus, Shaw and Grass are protected by the good-faith immunity of mental health professionals from claims under Section 1983. There is no evidence that they departed from accepted professional judgment, practice, or standards. Consequently, Shaw and Grass are entitled to summary judgment on the § 1983 claim.

## II. State Law Claims

Defendants Grass and Shaw contend that the doctrine of official immunity shields them from liability for the common law tort claims, and Rice County argues that it is protected from these claims by the related doctrine of vicarious immunity.

■ Official immunity is a common law doctrine which, in the absence of a willful or malicious wrong, protects a public official who is charged by law with duties which call for the exercise of the official's judgment or discretion. *Olson v. Ramsey County,* 509 N.W.2d 368, 371 (Minn.1993). A county is entitled to share in its employees' immunity through vicarious official immunity. *Id.* at 372. Official immunity shields judgment exercised at the operational level rather than the policymaking level, but it does not protect actions taken pursuant to ministerial duties, which are certain and merely involve the execution of a specific duty arising from fixed and designated facts. *Id.* at 371.

The Minnesota Supreme Court has specifically addressed the classification of the duties of a county social worker. *Olson v. Ramsey County,* 509 N.W.2d 368. It has held that formulation of a case plan is protected by official immunity because it in-

volves professional planning at the operational level, but that implementation of a case plan is not protected by official immunity. *Id.* at 372.

The issue is thus whether the decisions to transport Thomas Liverseed on each occasion in November 1993 involved professional planning at the operational level, or merely execution of specific duties arising from fixed and designated facts. The Court finds that these decisions involved professional planning.

The decision regarding where to provide care to a mentally retarded person abandoned by his legal guardian is one that requires professional planning similar to the planning involved in formulating a case plan. Such a decision is not a ministerial act which merely involves execution of a fixed duty; and therefore, it is not comparable to implementing a case plan. Thus, the Court finds that the individual defendants are protected by official immunity. It follows that vicarious official immunity shields the County. As plaintiff has not shown any evidence of willful or malicious conduct against plaintiff, the Court grants summary judgment to defendants on all common law tort claims.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants' motion for summary judgment [Docket No. 17] is **GRANTED;** and

2.  Defendants' motion for extension of pretrial deadlines and for a new trial date [Docket No. 31] is **DENIED** as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.